[Civ. No. 11172.   First Appellate District, Division One.—November 29, 1940.]

BYRON JACKSON COMPANY (a Corporation), Appellant, v. W. T. WOODS et al., Respondents.

Chickering & Gregory, Donald Y. Lamont and Paul L. May for Appellant.

Keyes & Erskine and Freston & Files for Respondents.

KNIGHT, J.—On August 10, 1928, Byron Jackson Company purchased the business and assets of the U. S. Tool Company, and as part of the sales transaction Hugh E. Stock (since deceased), W. T. Woods, O. C. Dunn, and Herbert W. Erskine, owners of more than two-thirds of the issued stock of the U. S. Tool Company, executed an indemnity agreement whereby they agreed to ''indemnify and hold harmless Byron Jackson Pump Co., a Delaware corporation, of and from any and all claims or demands of whatsoever kind or nature that at any time may be made against said Byron Jackson Pump Co. by: (1) said U. S. Tool Company, (2) any of the creditors of U. S. Tool Company, (3) any person or persons having any claim or claims of whatsoever kind or nature against U. S. Tool Company, or (4) any of the stockholders of U. S. Tool Company''. Eight years later Byron Jackson Company brought the present action against Woods, Dunn, Erskine and the legal representative of the estate of

Hugh E. Stock, deceased, to recover the sum of $4,537.36, claiming that the same was due under the terms of said agreement. Judgment was given for defendants, and plaintiff appeals.

The complaint alleged that the sum of money sued for represented the amount of expenses, including attorneys' fees, incurred by appellant in connection with a damage suit brought by International Supply Company, a retail dealer in oil drilling tools, against appellant, respondents, the U. S. Tool Company and the Empire Steel Products Company, Inc., which suit was settled by respondents prior to trial. The basis of the International suit was a large money judgment for patent infringement, which had been obtained against International on account of the sale to the trade by International of certain "rock-bit" cones used in oil drilling operations, which had been manufactured by the three companies named in the International suit and by them sold to International for resale to the trade.

The important events which led up to the filing of the International suit, and the circumstances attending the settlement thereof by respondents, were as follows: Originally these "rock-bit" cones were manufactured by the Empire company and sold to International. While these sales transactions were being carried on, and some time previous to June, 1927, the Hughes Tool Company, a manufacturer of oil drilling tools competing with the Empire company, commenced a patent infringement suit against International, charging it with the infringement of the Hughes patents in the sale of these cones. The Empire company then wrote International a letter to the effect that it would protect the latter against the results of any patent infringement litigation. Thereafter Empire sold its business to the U. S. Tool Company, which continued to manufacture said cones and sell them to International under a similar letter of guaranty. In April, 1928, the United States District Court entered a decree in the Hughes patent infringement suit, denying relief to the Hughes company and holding in effect that the cones sold by International did not infringe on the Hughes patents. The Hughes company took an appeal, and pending the appeal the U. S. Tool Company sold its business to appellant, and the indemnity agreement, which is the basis of this action, was executed. Appellant continued to operate the U. S.

Tool Company's plant until October 8, 1928, when it was shut down and the equipment and other assets moved to the main Byron Jackson plant. While operating the U. S. Tool Company's plant appellant continued to manufacture said cones and other supplies, and sell the same to International under the name of the U. S. Tool Company; and thereafter appellant continued to manufacture said cones at its own plant and to sell them to International up to December, 1929, and to the trade generally until June, 1931, under its own name. Immediately after the acquisition of the U. S. Tool Company the manager of appellant was advised of the pending Hughes suit against International for patent infringement, and was also informed that if appellant continued to manufacture and sell said ''rock-bit'' cones and the Hughes suit was sustained, appellant would be liable. The manager replied that nevertheless appellant would continue to manufacture and sell said cones, and hold the indemnitors if liability was established against appellant. Subsequently the mid-continent manager of appellant advised the International that appellant would continue the manufacture of these cones and sell the same to International under the same arrangements as with the U. S. Tool Company, and accordingly it continued to do so.

In April, 1931, the judgment of the United States District Court in the Hughes patent infringement action was reversed by the United States Circuit Court of Appeals, and thereafter final judgment was entered against International and in favor of the Hughes Tool Company in the sum of $37,880.27 and costs, representing the profits the Hughes company would have made if it instead of International had sold the cones which International had sold between May, 1927, and December, 1929. Immediately thereafter, and on May 15, 1931, appellant notified the trade that on June 1, 1931, it would discontinue the manufacture of these cones.

International then commenced its action against appellant, the U. S. Tool Company, respondents, and the Empire company, to recover $42,226.32 which was the amount of damages assessed by the United States Circuit Court in the Hughes patent infringement action, plus costs, interest and attorneys' fees. Appellant was served with process, and after demurrer had been sustained to the original complaint, it appeared in the action by filing a demurrer and an answer

to the amended complaint. Respondents filed a separate demurrer to the original complaint, and afterwards an answer to the amended complaint; and before trial of the case negotiated a settlement with International, pursuant to which they paid International the sum of $10,750. Thereupon International released all claims and demands, not only against respondents, who made the settlement, but against appellant and the other defendants as well; and caused a dismissal of the action to be entered accordingly. Appellant had nothing to do with the negotiations for the settlement, nor did it contribute anything toward the amount paid. Following such settlement and dismissal appellant commenced the present action.

As shown by the findings, the trial court adopted the view, contended for by respondents, and which in our opinion should be sustained, that appellant in defending against the International suit was defending against certain liability created by its own acts, for which damages were claimed; that such acts were independent of any liability covered by the indemnity agreement, and that therefore respondents were not liable under the terms of the said agreement for the payment of appellant's expenses in defending itself, even though the suit included other claims which might have been covered by the indemnity agreement. In other words, the trial court took the position, as do respondents on this appeal, that by the terms of the indemnity agreement respondent agreed only to indemnify appellant against claims and demands incurred or accruing up to the time of the agreement and the sale of the U. S. Tool Company to appellant—August 10, 1928; and that any liability created by appellant, either under the name of the U. S. Tool Company or its own name, *after* it took over the assets of the U. S. Tool Company, did not come within the terms of the indemnity agreement, but was an independent liability of appellant.

In this connection the evidence shows that at the time of the sale of the U. S. Tool Company to appellant, there was no agreement of any kind between the U. S. Tool Company and International requiring the former to sell its products to International. It could have ceased doing so at any time. Therefore, when appellant took over the U. S. Tool Company's business, it likewise was not required either to manufacture the cones or to sell the same to International. But it con-

tinued to do so for several months in the name of the U. S. Tool Company, and thereafter in its own name. Consequently, whatever liability arose from its actions subsequent to the taking over of the U. S. Tool Company was its own responsibility, and cannot be said to come within the terms of the indemnity agreement.

Appellant contends, however, that the allegations of the complaint in the International suit, attributing certain acts to appellant, do not charge appellant with a liability to International separate or independent from its liability for U. S. Tool Company's obligations, or if so, that no damages are claimed therefor except such as are stated to result from the claims covered by the indemnity agreement. There is no merit in either contention. For instance, among other things, in the second and sixth causes of action in the International complaint it is alleged that appellant, with full knowledge of the patent infringement guaranty under which the International was buying cones from the U. S. Tool Company, took over the business and assets of the U. S. Tool Company and thereafter "continued to manufacture said cones and other supplies, and to sell and deliver the same to plaintiff [International] under the name of U. S. Tool Company until on or about October 8, 1928, on or about which date said Byron Jackson Company continued the manufacture and distribution of said products under the name of said Byron Jackson Company, and thereafter continued to manufacture and sell said products to plaintiff". And again, in the eighth cause of action it was alleged that "Thereafter the defendant Byron Jackson Company continued the manufacture and sale of said products which were then the subject of said litigation. Plaintiff alleges that had it not been for the conduct and acts of the defendant Byron Jackson Company aforesaid and had not said defendant led plaintiff to believe that said defendant had undertaken and agreed to carry out the terms of said guaranty and indemnity agreements, plaintiff would not have continued to purchase said articles, or any of them, from the defendant Byron Jackson Company, but, on the other hand, would have ceased the purchase and sale of said articles and would have taken immediate steps to protect itself in the said litigation which was then on appeal." ██ Moreover, in the ninth, tenth and eleventh counts of the complaint, appellant was charged

as a joint tort feasor with other defendants therein, in a conspiracy to defraud International; that is to say, it was charged with being *in pari delicto* with other defendants; and under well-settled rules there can be no contribution between joint tort-feasors, nor in such cases will the law inquire into their comparative culpability. (31 Corpus Juris, p. 454.)

Thus it will be seen that the complaint not only charged appellant with committing wrongful acts after it acquired the U. S. Tool Company, to which the indemnity agreement does not apply, but it charged appellant also, along with other defendants, with committing acts intended to defraud the International and with being a party to and a participant in a fraudulent conveyance. Nor does it matter that the charges made against appellant in the International complaint may have been groundless, or for other reasons could not have been legally sustained. ■ The fact that they were made was sufficient to require appellant to defend itself against them; and under the general rule an indemnitee cannot recover against an indemnitor for counsel fees or costs incurred and voluntarily paid by him in defending a suit for damages caused by the indemnitee's own wrongful acts. (31 Corpus Juris, p. 437.)

■ Furthermore the situation is not altered by the fact that respondents settled the International suit. It is apparent that in doing so they were not compelled to take care of appellant's liability; and because they were successful in bringing about a dismissal of the action against appellant and all other defendants sued, upon a payment by them of less than one-fourth of the demand sued for, cannot be said to have operated to their prejudice.

■ Appellant makes the further contention that even though an independent liability of appellant was joined in the International suit with claims covered by the indemnitors' agreement, appellant nevertheless is entitled to partial reimbursement for the expenses of defending the action. This contention is based upon the fact that some of the cones sold by International, and which were part of the basis of the Hughes judgment against International, had been purchased by International from the U. S. Tool Company before the date of the execution of the indemnity agreement on August 10, 1928. However, in order to entitle appellant to such apportionment, the burden was upon appellant to establish

what part of the cones sold by International had been purchased before August 10, 1928, and what part thereafter. Some testimony was adduced on this subject, but it was entirely insufficient to form any basis for an intelligent apportionment. Therefore, in the absence of sufficient proof no apportionment of the expenses could be made.

The remaining points argued are merely incidental to those already discussed and decided, and likewise are without merit.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.