**William J. CONRAD, Plaintiff,**

v.

**Curtis SUHR, d/b/a Suhr Motor Company, Defendant and Appellant,**

**and**

**Versatile Manufacturing, Ltd., a Foreign Corporation of Canada, Defendant and Appellee.**

**Civ. No. 9373–A.**

Supreme Court of North Dakota.

Jan. 17, 1979.

Cahill, Gunhus, Streed, Grinnell, Jeffries & Klinger, Moorhead, Minn., and Harold A. Halgrimson, Fargo, for defendant and appellee; argued by James D. Cahill, Moorhead, Minn.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellant; argued by Mart R. Vogel, Fargo.

ERICKSTAD, Chief Justice.

The basic issue in this case is whether or not the trial court erred in ordering and entering judgment in favor of the defendant, Versatile Manufacturing Company, denying the defendant Curtis Suhr's motion and cause of action for attorneys' fees, costs and expenses in conjunction with Suhr's defense to an action for damages brought by William J. Conrad, arising out of injuries which Conrad incurred while operating a grain auger manufactured by Versatile and sold by Suhr. We affirm.

In his complaint, Conrad asserted in Count I that the defendants were strictly liable in tort, in Count II that the defendants had breached both express and implied warranties and were accordingly liable, and in Count III that in the design, manufacture, inspection, testing, servicing, advertising, and sale of the auger, and in failing to guard, instruct, or warn so as to prevent injury to persons using or working near it, the defendants were negligent, that their negligence was a proximate cause of his injuries and that they were accordingly liable.

Each of the defendants separately answered the complaint, alleging that Conrad was contributorily negligent and that he assumed the risk, and each of the defendants cross-claimed against the other for indemnity. The cross-claims were severed from the main trial to be determined later by the court.

The case went to the jury on the strict liability count only and the jury rendered a verdict assessing damages in the amount of $300,000. It attributed 50 percent of the cause of the damages to Versatile and 50 percent of the cause of the damages to Conrad. The jury attributed none of the cause of the damages to Suhr. Consequently, judgment was subsequently entered dismissing the complaint against Suhr.

This appeal was precipitated by the trial court's decision arising out of the motion made by Suhr for an order directing Versatile to pay all costs and attorneys' fees incurred by or on behalf of Suhr for his defense, which motion the trial court denied. The pertinent part of the motion reads:

"The grounds for this motion are that as a matter of law the defendant Suhr is entitled to full indemnity from Versatile for such costs and attorneys' fees because:

(1) Suhr's potential liability was derived vicariously from the misconduct of Versatile in the manufacture, assembly and sale of a machine found by the jury to have been in a defective condition unreasonably dangerous to the user."

In the concluding part of the trial court's memorandum opinion denying Suhr's motion for indemnification for attorneys' fees and costs, the trial court stressed the view that Suhr did not defend only on the basis of a derivative liability, but that Suhr defended in his own behalf because of his own alleged liability. The court said:

"The trial of the action was commenced on January 24, 1977. The testimony was concluded on February 4, 1977. The defendant Suhr, through his counsel, actively participated and introduced twenty of the sixty-eight exhibits in the case. After completion of the testimony at 2:26 P.M. on February 4, the plaintiff by motion withdrew the counts of his complaint as to negligence and breach of warranty and submitted his case to the jury on the

one issue of strict liability as to both defendants.[1] After the Court denied Motions of the plaintiff and each of the defendants for directed verdicts, summations to the jury were made by all parties.

"As hereinbefore stated, the verdict of the jury found that the auger was in a defective condition when it was delivered by the defendant Versatile to the dealer Suhr; that Suhr assembled the machine and the jury found that it was defective when he sold it to the plaintiff. The defect, said the verdict, was the proximate cause of the plaintiff's injuries, but attached liability only as to the defendant Versatile.

"From this record, it is the opinion of the Court that the defendant Suhr engaged in the trial for the purpose of defending against any claim of the plaintiff that he, the said defendant Suhr, was liable as a seller under the law of products or strict liability. It was not a case where Suhr had only a derivative liability, Suhr assembled the auger and sold it to the plaintiff in a defective condition. Suhr did not defend in the interest of, at the direction of or in reliance upon Versatile but rather in his own behalf because of his own alleged liability as a seller. Suhr did not defend merely because of his failure to discover or prevent the misconduct of Versatile but rather in his own behalf to establish nonliability in his assembly of the machine. Suhr defended as to allegations of the plaintiff which encompassed separate and independent charges of wrongful acts on his part.

"For the above and foregoing reasons the motion and claim of the defendant Suhr for indemnity as to his co-defendant Versatile is denied."

In response, no doubt, to the trial court's views, Suhr asserts that he was at no time charged separately or independently with wrong-doing in the complaint; that counsel for Conrad in closing argument at the trial said that there was no way that the manufacturer could hold the dealer responsible for the accident and that the jury would probably find the dealer's responsibility to be zero; and that counsel for Versatile in his summation to the jury said that the cause of the injuries should be apportioned 90 percent to Conrad and 10 percent to Versatile.

Versatile responds by asserting that it is immaterial that the complaint charges the defendants jointly and that if the transcript is examined, it will disclose that Suhr defended against the charges of negligence, specifically conceding that he could have assembled the auger in a manner different from the manner in which it was sent to him so that the set-screw would have been covered by the shield.

So that we may better understand the facts of this case, we draw upon the statement of the case submitted by Suhr in his brief.

This lawsuit involves injuries sustained by Conrad resulting from the defective condition of a grain auger. Versatile, the manufacturer of the grain auger, sold it to the dealer, Suhr, who in turn sold it to Conrad. Conrad was injured when his jacket sleeve was caught by a set-screw which protruded above the drive shaft and beyond a fixed shield.

Versatile's design drawing, exhibit E, provided for the set-screw to be guarded at the top by the fixed shield. The part of the auger directly involved in the accident, consisting of the shield, brackets, bearings, locking collars, and shaft with set-screw, was assembled at the factory with the set-screw protruding beyond the fixed shield, the bearings locked into place at a pre-determined distance from the end of the shaft, then paint-dipped and, with the other two sections, shipped to Versatile's dealers for final connection.

The design drawing was not furnished to the dealer nor was the dealer instructed by the manufacturer to reassemble the shield, brackets, bearings, locking collars, and set-

1. The plaintiff abandoned Count II dealing with breach of warranty and it was dismissed by Order on Pre-Trial, dated January 21, 1977.

screw, or change their relative locations in any way from the factory assembly.

Approximately 6,000 augers of the model involved in this lawsuit had been manufactured and sold by Versatile up to the time of the Conrad sale. The manufacturer's assembly instruction manual, exhibit D, accompanied each auger. There was nothing in the manual to instruct the dealer to loosen the collars, remove the paint, drive the shaft with a hammer, and move the set-screw into a position below the shield.

Continuing with Suhr's view, the readjustment would have involved taking paint off the shaft, loosening the collars at both ends, and forcing the shaft through, possibly ruining the seal and permitting dirt to get into the bearings, or damage the bearings themselves. He further contends that driving the shaft toward the pulley end, an inch and a quarter, would probably have caused a misalignment and forced the pulley up against the pulley shield.

The jury, in its special verdict, determined that the auger was defective when it left both Versatile's and Suhr's control, and it evenly divided responsibility between Conrad and Versatile.

Suhr contends that where a defendant, because of the wrongful act of another, is forced to defend himself, he is entitled to recover his loss including attorneys' fees and costs from the one responsible.

He refers us to the following from American Jurisprudence Second and from the Restatement of Torts [2]:

"§ 914. Expense of Litigation.

A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred." Restatement of Torts, § 914 (1939).

"§ 166.—*Litigation against third person as result of defendant's wrongful act.*

It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages." 22 Am. Jur.2d Damages § 166 (1965).

Suhr refers us to our recent case of *Herman v. General Irrigation Co.*, 247 N.W.2d 472 (N.D.1976), wherein we applied the equitable doctrine of indemnity, but in which case the issue of attorneys' fees was not involved.

The mere fact that we said in *Herman* that one party was entitled to indemnification in full against another does not settle the issue of attorneys' fees and costs in this case.

Other than *Herman*, which we have noted does not reach the issue of attorneys' fees, Suhr refers us to and relies upon *Koch v. City of Seattle*, 9 Wash.App. 580, 513 P.2d 573 (1973), an intermediate appellate court decision.

In *Koch*, the court quoted from *Vincent v. Parkland Light & Power Co.*, 5 Wash. App. 684, 491 P.2d 692 (1971) as follows:

" 'Regarding attorney's fees, it is the general rule that, in the absence of contract, statute or recognized ground of equity, a court has no power to award an attorney's fee as a part of the costs of litigation. *State ex rel. Macri v. Bremerton*, 8 Wash.2d 93, 111 P.2d 612 (1941). However, a narrow exception to this rule has been established in this state. The Supreme Court has held that when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorney's fees. *Wells v. Aetna Ins. Co.*, 60 Wash.2d 880, 376 P.2d 644 (1962). The original

---

**2.** *See also*, Restatement of Law, Second, Torts, T.D. No. 19 (1973).

suit generating the expenses must be instituted by a third party not connected with the initial wrongful act. *Armstrong Constr. Co. v. Thomson*, 64 Wash.2d 191, 390 P.2d 976 (1964). Clearly, Vincent fell into that third party category. 5 Wash. App. at 686–687, 491 P.2d at 694." *Koch v. City of Seattle*, 9 Wash.App. at 582, 513 P.2d at 575.

In *Koch*, it is apparent that the intermediate appellate court went beyond the pleadings to the evidence and concluded that the city should recover its costs and attorneys' fees saying:

"In the instant case the court found after trial that the city was not negligent at all and that Ford was solely negligent. The city would not have incurred costs and attorney's fees but for Ford's sole and active negligence. *Vincent v. Parkland Light & Power Co., supra*, applies." 9 Wash.App. at 585, 513 P.2d at 577.

Versatile contends that the key to indemnity is liability for damages and as the jury did not find Suhr liable for damages, he cannot recover for attorneys' fees and costs expended in defending the complaint. It asserts that no cause of action for indemnity arises until the indemnitee has suffered an actual loss as a result of the indemnitor's conduct, through the payment of damages. Versatile refers us generally to *United Gas Corp. v. Guillory*, 206 F.2d 49, 52 (5th Cir. 1953), *rehearing den.*, 207 F.2d 308 (5th Cir. 1953), and *Waylander-Peterson Co. v. Great Northern Ry.*, 201 F.2d 408, 416 (8th Cir. 1953).

In response thereto, Suhr refers us to a district court of appeal decision out of Florida, entitled *Pender v. Skillcraft Industries, Inc.*, 358 So.2d 45 (Fla.Dist.Ct.App.1978). We quote therefrom:

"The issue is apparently one of first impression in Florida; there are no cases requiring, under an implied contract theory, indemnification of attorney's fees and court costs to a defendant found not liable from a codefendant who is found liable. But by the same token, there are no cases prohibiting it. We believe that sound policy considerations favor the al-

lowance of indemnification for attorney's fees and court costs under the circumstances of this case.

"We therefore reverse the lower court's denial of the cross-claim for indemnification and hold that if a retailer would clearly have been entitled to indemnification of attorney's fees and court costs if it had lost in the main action and had a judgment rendered against it (for passive negligence, breach of implied warranty, or strict liability), then it will be equally entitled to such indemnification in the event that it should successfully defend itself in the main action." 358 So.2d at 47.

■ We tend to agree with *Pender* that indemnification of attorneys' fees and costs should not rest upon whether or not the indemnitee lost in the main action and had a judgment rendered against it.

Versatile's second main point is that traditionally each party pays its own attorneys' fee absent evidence of bad faith litigation, unjust enrichment, specific agreement, or statutory authorization. Versatile refers us to the note, "Attorneys Fees: Where Shall the Ultimate Burden Lie?" 20 *Vand.L.Rev.* 1216–33 (1967); and "Environmental Law—Attorney's Fees", 51 *N.D.L. Rev.* 530, 531–34 (1974).

Versatile asserts that allowing an award of attorneys' fees here would be tantamount to holding that the loser will pay the winner's attorneys' fees and that, accordingly, if Suhr is entitled to recover his defense costs because he succeeded in avoiding assessment for damages, then the victorious plaintiff, Conrad, should also be reimbursed for attorneys' fees. Versatile contends that no one would suggest that this is permissible under these facts.

Versatile asserts that neither *Herman v. General Irrigation, supra*, which we have earlier discussed, nor *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D.1976), which we have not heretofore discussed, both relied upon by Suhr, nor any of the North Dakota cases cited in Suhr's brief, deal with the question of indemnity for attorneys' fees in strict liability situations. This is true.

Although no cases have been found on the precise question, Versatile points out that this court has ruled that attorneys' fees cannot be awarded as costs under the court's equity powers.

Versatile relies upon *Tharaldson v. Unsatisfied Judgment Fund*, 225 N.W.2d 39 (N.D.1974). In *Tharaldson*, an unsatisfied judgment fund case, we said that the district court erred when it awarded, as costs to Tharaldson, $8,765.20 in medical expenses, and $2,000 in attorneys' fees. We said:

> "We have often stated, although in somewhat varying language, that costs are purely the creature of statute, and, absent statutory authorization, an allowance therefor cannot be made by a trial court. *City of Fargo v. Annexation Review Commission*, 148 N.W.2d 338 (N.D. 1966); *United Development Corp. v. State Highway Dept.*, 133 N.W.2d 439 (N.D.1965); *Gunsch v. Gunsch*, 67 N.W.2d 311 (N.D.1954)." 225 N.W.2d at 42.

It should be noted, however, that neither *Tharaldson* nor any of the cases cited in *Tharaldson* involve an indemnity action.

Versatile contends that, even in instances in which courts have permitted the recovery of attorneys' fees, if a person seeking attorneys' fees has been required to defend not only claims of another's breach of warranty or tortious conduct, but also allegations that encompass his own separate and independent acts, attorneys' fees are not allowed. For this proposition, it relies basically upon three Minnesota decisions, an Iowa decision, and a California decision.

In the case of *O'Connell v. Jackson*, 273 Minn. 91, 96, 140 N.W.2d 65, 69 (1966), attorneys' fees were allowed and awarded to the indemnitee under the particular facts present there, but the Minnesota court acknowledged the rule to be:

> "2. Where such attorney's fees have been disallowed, the reason is usually that the person seeking attorney's fees has been required to defend not only claims arising out of the other's breach of warranty or tortious acts, but also allegations or accusations which encompass sep-

arate and independent charges of wrongful acts on his part." 273 Minn. at 96, 140 N.W.2d at 69.

In *Farr v. Armstrong Rubber Company*, 288 Minn. 83, 179 N.W.2d 64 (1970), the plaintiff was injured when a tire, manufactured by one defendant and sold to the plaintiff by another, blew out while the plaintiff was driving his recreational vehicle. The seller sought indemnity from the manufacturer. Although the court held that as the seller's liability stemmed solely from its passive role as the retailer of a defective product furnished to it by the manufacturer it was entitled to indemnity, it declined to permit the seller to recover its attorneys' fees in defense of the action. In so holding, it said:

> "8. In cases where a party seeking indemnity has been required to defend claims arising out of another's wrongful conduct and also to defend accusations which encompass his separate wrongful acts, the court may properly disallow attorney's fees in indemnity action. Since Olson was required to defend against the breach of warranty claims, it was in the position of defending its own wrongful conduct and therefore reasonable attorneys' fees must be denied. See, *O'Connell v. Jackson*, 273 Minn. 91, 140 N.W.2d 65; *Fidelity & Cas. Co. of New York v. Northwestern Tel. Exch. Co.*, 140 Minn. 229, 167 N.W. 800; *Inhabitants of Westfield v. Mayo*, 122 Mass. 100, 23 Am.Rep. 292." 288 Minn. at 97, 179 N.W.2d at 72–73.

In *Pfeifer v. Truck Crane Service Co.*, 308 Minn. 279, 242 N.W.2d 587 (1976), the court held in a non-products liability case that there is no right to indemnity for attorneys' fees when a third party defendant has no duty to raise a defense for the benefit of the third party plaintiff.

Versatile quotes from an Iowa case of *Rauch v. Senecal*, 253 Iowa 487, 112 N.W.2d 886 (1962), as follows:

> "Our holding is confined to the proposition that a defendant who successfully defends against his own primary negli-

gence, in part at least, may not recover his expenses as indemnity against a codefendant who is found liable for negligence. This is so even though some charges of negligence were made, and defended, as to which the liability of the first defendant was secondary only to that of the second defendant." 253 Iowa at 493, 112 N.W.2d at 889.

Because Suhr, in the instant case, was charged with failing to warn, and the party in the position similar to Suhr in *Rauch* was also charged with a failure to warn, we think it interesting what the court had to say on that subject.

"As to the matter of failure to warn, we have pointed out that Senecal had an opportunity, the best opportunity, in fact, to give warning to the purchaser of the defective valve, of the dangerous characteristics of the water heater; and he was defending this charge of negligence, *even though ultimately it was not submitted to the jury.*" [Emphasis added.] 253 Iowa at 493, 112 N.W.2d at 889.

Suhr points out that *Rauch v. Senecal, supra,* was criticized in the subsequent Iowa decision of *Peters v. Lyons,* 168 N.W.2d 759 (Iowa 1969):

"Is the determination of recoverability of attorney fees to be based on the charges made by the injured party or on the facts as found by the court or jury? As noted by Judge Hanson, under *Rauch v. Senecal,* supra, it may be argued the determination is to be made on whether primary acts are alleged. We reject this basis for such determination. First, the indemnitee may wisely settle with a claimant before suit is actually filed, indeed, it may be his duty to do so under certain circumstances, and attorney fees may be incurred in the process. Second, the determination of this matter as between indemnitor and indemnitee should not rest on the presence or absence of such pleading by a third party, who through an overabundance of caution or optimism alleges more (or less) than he can prove. The decision must be made on the facts as found by the trier thereof." 168 N.W.2d at 770.

The third jurisdiction relied upon by Versatile is that of California. Versatile draws our attention to the following from *Byron Jackson Co. v. Woods,* 41 Cal.App.2d 777, 107 P.2d 639, 643 (1940):

"[T]he complaint . . . charged appellant with committing wrongful acts . . . Nor does it matter that the charges made against appellant . . . may have been groundless, or for other reasons could not have been legally sustained. *The fact that they were made was sufficient to require appellant to defend itself against them*; and under the general rule an indemnitee cannot recover against an indemnitor for counsel fees or costs incurred and voluntarily paid by him in defending a suit for damages caused by the indemnitee's own wrongful acts." [Emphasis added.] 41 Cal.App.2d at 783, 107 P.2d at 643.

In a more recent California decision, the California Supreme Court, in *Davis v. Air Tech. Industries, Inc.,* 148 Cal.Rptr. 419, 582 P.2d 1010 (1978), in a divided opinion, overruled a decision of the Court of Appeals for the Second District in its decision of *Davis v. Air Tech. Industries, Inc.,* 67 Cal.App.3d 701, 136 Cal.Rptr. 799 (1977).

In the earlier *Davis* decision, the intermediate appellate court affirmed the decision of the trial court which allowed attorneys' fees in a case said by counsel for Suhr to be "strikingly similar to the instant one".

In the California Supreme Court decision in *Davis,* the majority of the court pointed out that the legislature of California had established that, in the absence of an express agreement or statute, each party to a lawsuit is responsible for its own attorneys' fees. Although it acknowledged that limited exceptions had been made to the rule embodied in the code, it pointed out that the Supreme Court of California had never held that attorneys' fees may be awarded in ordinary products liability cases.

In discussing an exception authorizing attorneys' fees for defendants who prevail on claims for implied warranty, the court said:

"Even if this court were to carve out such an exception for indemnified tort defendants, a review of the purpose behind this exception reveals that it would not apply in cases where the indemnitee incurred attorney's fees solely in defense of his own alleged wrongdoing. The exception was intended to authorize the reimbursement of the defense costs of a party held constructively liable 'because of the actual default of another *for whose benefit the defense [was] really conducted . . . .'* (*C. & O. C. Co. v. County Comm'rs.* (1881) 57 Md. 201, 226, emphasis added.) As recognized in the leading case of *Westfield v. Mayo* (1877) 122 Mass. 100, 105, there was no basis for awarding attorney's fees where the indemnitee had actually defended *for its own benefit* rather than for that of another: 'When . . . the claim against [the indemnitee] is upon his own contract, or for his own misfeasance, . . . counsel fees paid in defence of the suit against himself are not recoverable.'" 148 Cal.Rptr. at 421, 582 P.2d at 1012.

The California Supreme Court went on to assert that the better reasoned, modern decisions have followed *Westfield* and have refused to compel manufacturers to pay attorneys' fees to indemnified suppliers and distributors who have defended against allegations that they were independently liable for negligence or breach of warranty.

In reversing the intermediate appellate court, the Supreme Court said:

"Since Davis defended exclusively against allegations of his own negligence, he is not entitled to recover attorney's fees." 148 Cal.Rptr. at 422, 582 P.2d at 1013.

■ In the instant case, Suhr also defended exclusively against allegations of his own negligence, and, notwithstanding the fact that the negligence issue was taken from the jury when the case was finally submitted to the jury, we believe that because the defense was conducted for his own benefit, Suhr did not fit within the exception set forth in *Davis, i. e.* attorney fees are allowed if the defense is essentially being conducted for another's benefit.

In addition to the case of *Rauch v. Senecal, supra,* which we have earlier discussed herein, the California Supreme Court referred to *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143, 156–157 (Mo.1967); *Sorenson v. Safety Flate, Inc.,* 306 Minn. 300, 306, 235 N.W.2d 848, 852 (1975); and *Shaffer v. Honeywell, Inc.,* S.D., 249 N.W.2d 251, 260 (1976).

We have read those decisions and we find them supportive.

We believe that the trial court's disallowance of attorneys' fees in the instant case is supportable even if it should be contended that Suhr did not defend exclusively against allegations of his own negligence. We believe it is sufficient if he defended against any allegations of his own negligence, of his own warranty, or of his own strict liability.

Any other rule would be not only unworkable, but would be inconsistent with the general rule that tort defendants, even if vindicated, must pay for their own defense.

■ In closing, we express the view that the pleadings are an integral part of litigation and that in determining whether or not a party may be indemnified for his attorneys' fees and costs, the court may examine the pleadings to determine whether or not the party seeking indemnification from another was exclusively or partially defending against allegations of his own negligence, his own warranty, or of strict liability.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

VANDE WALLE, PEDERSON and PAULSON, JJ., concur.

SAND, Justice (concurring specially).

I concur in the opinion authored by Chief Justice Erickstad. Nevertheless I deem it appropriate to make additional observations and comments. The legal concept that a person is liable for any damages he has caused is not new.

The Code Napoleon (1804), § 1383, provided as follows:

"Chacun est responsable du damage qu'il a cause non seulement par son fait, mais encore par sa negligence ou par son imprudence." [Every person is responsible for the damage that he has caused not only by his act, but also by his negligence or by his imprudence.]

The Louisiana Civil Code contains substantially the same concept:

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

The Field draft Code of New York (§ 853, 1865) contained a very similar provision. North Dakota, in many instances adopted the Field Code as reflected in § 32–03–01, North Dakota Century Code, which provides as follows:

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

These basic concepts have been and are recognized and applied to various situations and circumstances, but rarely, if at all, to include attorney fees, even if they meet and come within the usual standards of damages.

Attorney fees are treated differently in most situations even though they have many similarities with damages and indemnity. By way of illustration, indemnity under the ordinary definition includes damages but not attorney fees. In some areas by specific statutory law attorney fees are considered part of damages.

In North Dakota the Legislature generally, with few exceptions, has recognized and followed the old common law concept that attorney fees in civil or criminal actions must be left to the agreement, express or implied, between the parties. Costs, however, are allowed to the prevailing party. Section 28–26–01 (prior to 1977 amendment), NDCC. This section has now been amended by Chapter 283, 1977 Session Laws, to provide as follows:

"1. Except as provided in subsection 2, the amount of fees of attorneys in civil actions must be left to the agreement, express or implied, of the parties.

"2. In civil actions the court may, in its discretion, upon a finding that the pleading was frivolous, award reasonable actual or statutory costs, or both, including reasonable attorney's fees to the prevailing party."

The concept that attorney fees is a matter between the client and his attorney is embedded and recognized as the law in this State even to the extent that attorney fees are not recoverable in an action unless expressly authorized by law. *Kilby v. Movius Land & Loan Co.,* 55 N.D. 830, 215 N.W. 284 (1927).

Along the same line, the North Dakota Court has stated that costs (which under some provisions include attorney fees) are purely the creature of the statute and can be awarded only when expressly authorized by statute. *Wallace v. Workmen's Compensation Bureau,* 70 N.D. 193, 293 N.W. 192 (1940).

The North Dakota Legislature has enacted laws providing for and authorizing the payment of attorney fees in certain cases such as eminent domain (§ 32–15–32, NDCC), prevailing claimant in workmen's compensation cases (§ 65–10–03, NDCC), and reasonable attorney fees in certain criminal cases (§ 29–07–01.1, NDCC). The United States Congress has authorized attorney fees in antitrust actions under 15 U.S.C. § 15; also, in civil rights cases and class actions under the antitrust statutes. There are only a few instances in which the North Dakota Legislature or the Congress has provided for attorney fees in proceedings or actions in law.

Generally, either as a result of statutory law or case law, attorney fees are not allowed to a party who has successfully defended against an action unless the action was frivolous. See § 28–26–01, NDCC, as amended.

The law, as illustrated by the instant case, leaves the retailer in a products liabili-

ty case in a "Catch–22" situation—a choice between Scylla and Charibdis, which is neither fair nor just.

If the manufacturer's product has a defect and the retailer calls it to the attention of the manufacturer, the retailer in so doing places himself in a risky position of being charged with knowledge of the product's fault, and then if the retailer does not affirmatively act in warning the purchaser of this defect the retailer can be charged with negligence. If the retailer attempts to correct a defect or hazard and subsequently something occurs resulting in an injury to the purchaser or user the retailer can be blamed and the manufacturer can take the position that it was all the fault of the retailer for having made some alteration. Similarly, if there is a defect or hazard which the retailer did not spot or notice as such he can be charged with negligence for not noticing it and not doing something about it.

In addition, and in some products liability cases, the retailer is made a defendant only to maintain a chain of possession, to keep the chain of transaction intact, to avoid or correct some jurisdictional problem, or simply because it is deemed advantageous for whatever reason. Thus the retailer has the choice of either getting out of the business or suffering the consequences—such a Hobson's choice in my judgment is not fair or just—unless it can be assumed that the profit is sufficiently adequate to compensate for the risk.

In my view it does not require any legal ingenuity to draft a complaint charging someone with negligence. If the allegations of a complaint were to constitute the basis for determining whether or not a person will be obligated to defend himself without recovering attorney fees there would in fact be no safeguard at all, because it would be a simple process to draft a complaint alleging negligence even though there would be no iota of evidence to support the allegation. Pleadings alone should be resorted to only if there is no other evidence available in the record. *Applegren v. Milbank Mutual Insurance Compa-*

*ny,* 268 N.W.2d 114 (N.D.1978). It can be readily seen that the retailer is in a bind. However, because of the development of case law which we inherited and which to a degree was promoted by statutory law, and because of the existence of the law in this state that attorney fees are not included in damages unless otherwise provided for by statute, the conclusion reached in the opinion by Chief Justice Erickstad is proper under the circumstances.

Even though this court has the authority under § 87 of the North Dakota Constitution to promulgate procedural rules, this matter is more substantive than procedural and legislation would be the more appropriate way of resolving the inequity.

I believe that this is a matter that may and should be corrected by appropriate legislation rather than by court rule or decision.