Richard A. WINKLER, Plaintiff
and Appellee,

v.

GILMORE & TATGE MFG. CO., INC.;
DaKon, Inc.; and Hausauer Implement,
Defendants and Appellees,

Kent Manufacturing, Defendant
and Appellant.

Civ. No. 10337.

Supreme Court of North Dakota.

May 26, 1983.

Neil W. Fleming, Cavalier, for plaintiff and appellee.

O'Grady, Morley & Morley, Grand Forks, for Gilmore & Tatge Mfg. Co., defendant and appellee; argued by Patrick R. Morley, Grand Forks.

Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendant and appellant; argued by Jay H. Fielder, Grand Forks.

PEDERSON, Justice.

This is an appeal from a judgment awarding Gilmore & Tatge Mfg. Co., Inc. (Gilmore) attorney fees and costs incurred while defending an action for damages brought by Richard Winkler, for injuries he suffered while descending a ladder on a grain dryer built by Kent Manufacturing and distributed by Gilmore. We affirm.

While harvesting sunflowers, Winkler noticed that the auger belt on the grain dryer he was operating had slipped, apparently because it was clogged with sunflowers. To determine where the dryer was clogged, Winkler turned the dryer off and climbed the ladder attached to the side of the grain dryer. Winkler cleaned the auger and started to climb down the ladder. The ladder pulled off the dryer and Winkler fell to the ground. As a result of the fall, Winkler broke a bone in his left foot.

Winkler brought suit for personal injuries and consequential damages against Kent, a manufacturer of grain dryers, Gilmore, a seller, Dakon, Inc., a distributor, and Hausauer Implement, a retail seller. In his complaint, Winkler asserted that the defendants were strictly liable in tort and that they breached the implied warranties of merchantability and fitness for a particular purpose.

The case went to the jury on the strict liability claim only and the jury, in a special verdict, assessed damages for personal injuries in the amount of $10,000. It attributed 50% of the cause of damages to Hausauer Implement, 36% of the cause of damages to Kent Manufacturing, and 14% to Winkler. The jury attributed none of the cause of damages to Gilmore or Dakon, Inc. Judgment was entered accordingly.

After trial Gilmore, pursuant to § 28–01.-1–07, NDCC, moved for an order directing Kent Manufacturing to pay all costs and attorney fees incurred by Gilmore for its defense. The court granted Gilmore's motion and Kent Manufacturing appealed.

Traditionally, each party to a lawsuit pays its own attorney fees absent evidence of bad faith litigation, unjust enrichment, specific agreement, or statutory authorization. *Conrad v. Suhr,* 274 N.W.2d 571, 575 (N.D.1979). Such statutory authorization is provided in North Dakota's Products Liability Act, Chapter 28–01.1, NDCC. Before statutory authorization was specifically provided, however, a retailer in North Dakota who successfully defended against allegations of his own negligence in a prod-

ucts liability action could not recover attorney fees and costs from the manufacturer. *Conrad, supra,* 274 N.W.2d at 578. Retailers are now able to recover their costs of defense pursuant to § 28–01.1–07, NDCC, which provides as follows:

"Indemnity of seller. If a product liability action is commenced against a seller, and it is alleged that a product was defectively designed, contained defectively manufactured parts, had insufficient safety guards, or had inaccurate or insufficient warnings; that such condition existed when the product left the control of the manufacturer; that the seller has not substantially altered the product; and that the defective condition or lack of safety guards or adequate warnings caused the injury or damage complained of; the manufacturer from whom the product was acquired by the seller shall be required to assume the cost of defense of the action, and any liability that may be imposed on the seller."

For the purpose of indemnity the Act, in § 28–01.1–06(1), NDCC defines a manufacturer as:

"[A] person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller who has actual knowledge of a defect in a product or a seller of a product who creates and furnishes a manufacturer with specifications, relevant to the alleged defect, for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process or who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer. The term also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer. A seller not otherwise a

manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he:

a. Does not otherwise specify how the product shall be produced; or

b. Does not control, in some significant manner, the manufacturing process of the product,

and the seller discloses the actual manufacturer."

A seller is "any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption." Section 28–01.1–06(3), NDCC.

In granting Gilmore's motion for indemnity, the court found Gilmore to be a "seller" and Kent a "manufacturer" within the meaning of § 28–01.1–06, NDCC. The court also found that "the purpose of Chapter 28–01.1, NDCC is to provide indemnity for costs and attorney fees from any manufacturer to a seller who is not at fault." The court concluded that because Gilmore was a seller "free of fault" it was entitled to reasonable costs and attorney fees.

On appeal, Kent argues that the award of costs and attorney fees was not proper for the following reasons: 1) Kent was not obligated to provide a defense for Gilmore pursuant to §§ 28–01.1–06 and 28–01.1–07; 2) the issue of indemnity should have been presented to the jury rather than determined by the court; and 3) Sections 28–01.1–06 and 28–01.1–07 are unconstitutional.[1] Kent also argues that the meaning of § 28–01.1–07 is unclear, requiring this court to ascertain legislative intent before determining if Gilmore was entitled to indemnity from Kent.

The primary purpose of statutory construction is to determine the intent of the Legislature. *Matter of Persons,* 334 N.W.2d 471 (N.D.1983); *Morton County v. Henke,* 308 N.W.2d 372 (N.D.1981). If a

---

1. Because the constitutionality of § 28–01.1–07, NDCC was challenged, the Attorney General received notice of oral argument as required by § 32–23–11, NDCC. The Attorney General, however, did not participate in oral arguments or submit a brief to this court.

statute's language is ambiguous or of doubtful meaning, a court may consider certain extrinsic aids enumerated in § 1–02–39, NDCC, along with the language of the statute to ascertain legislative intent. *Apple Creek Tp. v. City of Bismarck,* 271 N.W.2d 583 (N.D.1978). Thus, our first consideration is whether § 28–01.1–07 is ambiguous.

■ Although § 28–01.1–07 has been a part of the Products Liability Act since its inception in 1979, it has never been the subject of an appeal. We are thus presented with a novel question concerning the proper construction and application of § 28–01.1–07, NDCC.[2] A perusal of § 28–01.1–07 indicates that the language of the statute is unclear and of doubtful meaning. See also Kraft, *The North Dakota Equity For Tortfeasors Struggle—Judicial Action vs. Legislative Over-Reaction,* 56 N.D.L. Rev. 67, 99–112 (1980) (noting that § 28–01.1–07 is "ambiguous in a number of ways" and questioning the constitutionality of the Act). Section 28–01.1–07 is unclear as to whether a manufacturer must be found negligent and the seller absolved before the seller can seek indemnity. It is also unclear at what point the manufacturer's duty to assume the costs of defense arises. Finally, the statute is silent as to whether the question of a seller's right to indemnity should be presented to the jury or be determined by the court.

Because the language of § 28–01.1–07 is ambiguous, we may consider the extrinsic interpretation factors set forth in § 1–02–39, in addition to the language of §§ 28–01.1–06 and 28–01.1–07, NDCC. Section 1–02–39 provides that:

> "If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:
>
> 1. The object sought to be attained.
> 2. The circumstances under which the statute was enacted.
> 3. The legislative history.
> 4. The common law or former statutory provisions, including laws upon the same or similar subjects.
> 5. The consequences of a particular construction.
> 6. The administrative construction of the statute.
> 7. The preamble."

North Dakota's Products Liability Act is designed to encourage insurance companies to continue providing products liability insurance by "limiting the time [within which an action may be commenced against manufacturers] to a specific period for which products liability insurance premiums can be reasonably and accurately calculated...." Section 28–01.1–01(3), NDCC. See also Kraft, *Equity of Tortfeasors, supra,* 56 N.D.L.Rev. at 100; 1979 Legislative Council Report at 137. The Act was a product of a 1977 interim committee study on products liability concerns.[3] See 1979 Legislative Council Report at 138. The result of the interim committee's study was House Bill No. 1075. House Bill No. 1075 was passed by the Legislature in 1979 over Governor Link's veto and was codified at §§ 28–01.1–01 through 28–01.1–05, NDCC.

2. While many states have adopted products liability legislation, few have adopted statutory indemnification provisions. See Ariz.Rev.Stat. Ann. § 12–684 (1978); Ark.Stat.Ann. § 34–2806 (Supp.1979). Both Arizona's and Arkansas' statutes are distinguishable from § 28–01.1–07, NDCC, and neither provision has been the subject of litigation.

3. Two bills that would have regulated products liability actions were introduced in the 1977 Legislative Assembly. Senate Bills Nos. 2096 and 2353 contained provisions limiting the statute of limitations for products liability actions, providing for payment of judgments in annual installments, increasing the number of defenses available in products liability actions, limiting damages to the useful life of a product, providing a collateral source rule, and limiting punitive and exemplary damages. Senate Bill No. 2096 did not contain an indemnity provision but did require that "the amount of reasonable attorney's fees to be paid by each litigant shall be reviewed and approved by the trial judge prior to final disposition of the case by the district court." Senate Bill No. 2096 was referred to the Judiciary Committee and then withdrawn by its sponsor. Senate Bill No. 2353 was defeated in the House of Representatives.

Section 28–01.1–07, NDCC was separately introduced as House Bill No. 1589. The bill had been proposed to the interim committee but was rejected "because current law adequately covers these areas [of statutory indemnification and court costs and attorney fees for frivolous actions]." 1979 Legislative Council Report at 139. It is interesting to note that House Bill No. 1589 was introduced on January 23, 1979, less than one week after this court announced its decision in *Conrad v. Suhr, supra.* Thus, House Bill No. 1589 was apparently, in part, a response to our denial of attorney fees and costs to sellers defending products liability actions in *Conrad.*

The testimony on House Bill No. 1589 before the Committee on Industry, Business and Labor is also revealing. One of the bill's sponsors who testified in support of the bill stated that its purpose was to "relieve" North Dakota retailers of products liability suits that they are subjected to merely because the retailer sold the product. The sponsor also testified that if the retailer is named "just because he sold the product, and there is no indication that he is liable, then the manufacturer must defend the suit and pay the cost of defending the retailer." Hearings on House Bill No. 1589 Before the Committee on Industry, Business, and Labor, 46th Legislative Assembly of North Dakota (1979) (statement of Mike Unhjem, Representative, Jamestown, ND).

█ After reviewing the applicable legislative history it appears that the intent of § 28–01.1–07, NDCC is to allow indemnity in those cases where only the manufacturer is found liable and the seller is absolved. To hold otherwise would require us to construe § 28–01.1–07 as requiring every manufacturer named in a products liability action to bear the costs of defense, whether or not it is found liable. The rules of statutory interpretation militate against such an "absurd" result. See *State v. Jelliff,* 251 N.W.2d 1, 7 (N.D.1977) ("[s]tatutes must be construed to avoid ludicrous and absurd results ...."). The availability of costs and attorney fees thus depends upon the findings of the trier of fact rather than upon the allegations made in the parties' pleadings. Therefore, even though the pleadings contain each allegation enumerated in § 28–01.1–07, NDCC, the seller may not recover costs unless the trier of fact attributes none of the fault to the seller.[4]

This court has often stated that legislation is to be construed so as to preserve its constitutionality. *Kottsick v. Carlson,* 241 N.W.2d 842, 847 (N.D.1976); *State v. Julson,* 202 N.W.2d 145, 151 (N.D.1972). See also §§ 1–02–38 and 1–02–39, NDCC. Our interpretation of § 28–01.1–07, NDCC comports with general principles of indemnity and precludes Kent's constitutional attack on equal protection and due process grounds. For a discussion on indemnity, see generally 41 Am.Jur.2d Indemnity §§ 20, 25 (1968) ("It has been said that the right of indemnity depends on the principle that everyone is responsible for the consequences of his own wrong, and if others are compelled to pay damages that ought to have been paid by the wrongdoer, they may recover from him ...." "[A] retailer has a right of indemnity against a manufacturer where an article sold caused injury to others because of the manufacturer's negligence."); *Herman v. General Irrigation Co.,* 247 N.W.2d 472, 480 (N.D.1976) (If seller does no active wrong and does not alter the product before it is sold, the seller is entitled to be indemnified by manufacturer for damages); 42 C.J.S. Indemnity § 2 (1944); American Law of Products Liability 2d, § 18:7 (1975).

Kent next asserts that Gilmore is not entitled to indemnity as a "seller" because it exercised control over the design and manufacture of the grain dryer and is therefore a "manufacturer." Kent also ar-

---

4. We agree with the observation of the Supreme Court of Iowa:

"[The availability of costs] as between indemnitor and indemnitee should not rest on the presence or absence of such pleading by a third party, who through an overabundance of caution or optimism alleges more (or less) than he can prove. The decision must be made on the facts as found by the trier thereof." *Peters v. Lyons,* 168 N.W.2d 759, 770 (Iowa 1969).

gues that the question of whether Gilmore was a seller or a manufacturer should have been presented to the jury rather than determined by the court.

■ A "seller" can also be a "manufacturer" pursuant to § 28–01.1–06(3), NDCC. Section 28–01.1–07, NDCC does not preclude a seller who is also a manufacturer from seeking indemnity from another manufacturer. Evidence presented at trial indicated that Kent manufactured the grain dryer and that Gilmore never had physical possession of the dryer. While design changes were to be authorized by Gilmore, the evidence revealed that Gilmore did little more than place its private label on the product.

■ The question of whether Gilmore was a seller was not specifically addressed in the special verdict form. Rule 49(a), NDRCivP, provides that the court may require a jury to return a special verdict "in the form of a special written finding upon each issue of fact." If the court omits any issue of fact raised by the evidence, "each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury." Rule 49(a), NDRCivP. As to any issue omitted without a demand, "the court may make a finding." Kent did not submit a proposed question on whether Gilmore was a "seller" as defined by § 28–01.1–06(3), NDCC. Because Kent did not demand that the issue go before the jury, we conclude that the court did not err in making a finding on the issue pursuant to Rule 49(a), NDRCivP. See *Merrill Iron & Steel, Inc. v. Minn-Dak Seeds, Ltd.*, 334 N.W.2d 652 (N.D.1983). Accordingly, we review the court's finding on the issue in accordance with Rule 52(a), NDRCivP. *Merrill Iron & Steel, supra*, 334 N.W.2d at 657. We find that the evidence presented at trial sustains the finding that Gilmore was a "seller." Thus, the court did not err in ordering Kent to pay reasonable costs and attorney fees incurred by Gilmore for its defense.

The judgment is affirmed.

ERICKSTAD, C.J., and PAULSON, VANDE WALLE and SAND, JJ., concur.