STANLEY L. SORENSON v. SAFETY FLATE, INC., AND OTHERS.

216 N. W. 2d 859.

February 22, 1974—Nos. 43938, 43982.

*Richards, Montgomery, Cobb & Bassford, Jon D. Jensvold,* and *Jerome C. Briggs,* for appellant.

*Alderson, Catherwood, Ondov & Leonard* and *Gary E. Leonard,* for respondent Standard Oil.

*John E. Castor* and *Robert T. Stich,* for respondent Hennessy-Three Star.

Heard before Knutson, C. J., and Otis, Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court.

MacLAUGHLIN, JUSTICE.

The issue in this case is the right of indemnification among the defendants. The trial court entered orders concerning indemnity which we now affirm.

Plaintiff Stanley L. Sorenson was injured while employed at Jay's Truck Stop in Albert Lea, where part of his duties consisted of changing truck tires. There is a great potential danger of injury involved in changing truck tires because certain rim assemblies have a propensity, if in a damaged condition or if improperly seated, to fly off with great force upon inflation of the tire. At the time of the injury plaintiff was engaged in changing a truck tire with the aid of a safety device known as the "Safety Flater," which his employer had purchased specifically to prevent such accidents from occurring. The Safety Flater was designed to fit over the rim of the tire and prevent the disengagement of the rim during the tire's inflation. Unfortunately, it did not perform as intended, and plaintiff was injured when a part of the tire rim flew off and struck him.

The Safety Flater was designed by one John Merriman who entered into a license agreement with defendant Safety Flate, Inc., a corporation formed for the purpose of marketing the device. An officer of Safety Flate contacted defendant Standard Metal Products Company, a corporation engaged in metal fabricating, to inquire if Standard Metal could fabricate the device

for Safety Flate. Standard Metal agreed to fabricate the device and a prototype of the Safety Flater was submitted to Standard Metal. Standard Metal was instructed to duplicate the prototype exactly. Prior to beginning actual production, Standard Metal submitted two sample Safety Flaters to Safety Flate for approval, and the two samples were approved by Safety Flate. Neither Safety Flate nor Standard Metal ever tested the device or caused it to be tested. Completed Safety Flaters were stamped "Safety Flate, Inc." by Standard Metal, placed in cardboard cartons, and shipped to Safety Flate.

Safety Flate made arrangements for the distribution and sale of the Safety Flater with Jack P. Hennessy Company, a corporation which later merged with Three Star Sales Corporation of Illinois. For the purposes of this decision, these corporations may be considered as one defendant (Hennessy-Three Star).

Hennessy-Three Star would submit orders from customers to Safety Flate with instructions to ship the Safety Flater directly to the customer. Safety Flate would then ship the device to the customer but would bill Hennessy-Three Star.

One of the purchasers of Safety Flaters from Hennessy-Three Star was defendant Standard Oil, a division of American Oil Company. Standard Oil in turn sold the device directly to users. In making its sales presentation to Standard Oil, Hennessy-Three Star used a descriptive printed "flyer" which they had prepared, illustrating and describing the Safety Flater. The flyer contained the following language:

"Whether you change one or fifty tires a day the danger of exploding lock rings always exists. Everyone knows the damage or serious injury that may occur. It only has to happen once. THE THREE STAR SAFETY FLATER will protect your man and enable you to meet insurance underwriters specifications for safety."

The flyer also depicted alternative ways of protecting oneself while changing a truck tire, but suggested that the Safety Flater

was the preferable method. No test of the Safety Flater was ever made by either Hennessy-Three Star or Standard Oil.

Plaintiff's employer, who had purchased the Safety Flater for use in his service station, testified that he had seen and relied upon the flyer prior to his purchase of the Safety Flater from Standard Oil. He said he did not know where the flyer came from, but assumed that it had been provided by Standard Oil.

At the end of the trial, the court ruled as a matter of law that both Safety Flate and Standard Metal were manufacturers of the Safety Flater and that Hennessy-Three Star and Standard Oil were distributors. No appeal has been taken from that ruling. The jury by a special verdict found no negligence on the part of plaintiff, but found all defendants liable to plaintiff on the theory of strict liability in tort. In addition, defendants Standard Metal and Safety Flate were found to be negligent, and defendants Hennessy-Three Star and Standard Oil were found to have made and breached an express warranty. Further, the jury, in response to a specific question submitted to them, ascribed percentages of wrongful conduct to each of the parties. No question has been raised in this court regarding the questions submitted to the jury or the findings of the jury.

Subsequent to trial, and after hearing arguments on defendants' cross-claims for indemnity, the trial court entered an order for judgment (a) denying claims for indemnity asserted by defendants Standard Metal and Safety Flate against all other defendants, including each other; (b) granting claims for indemnity of defendants Hennessy-Three Star and Standard Oil against defendants Standard Metal and Safety Flate; (c) granting a claim for indemnity of Standard Oil against Hennessy-Three Star and denying a claim for indemnity of Hennessy-Three Star against Standard Oil; and (d) reserving for future consideration the cross-claims of each defendant against the others for contribution.[1]

---

[1] In Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 371, 104 N. W. 2d 843, 847 (1960), we distinguished contribution and indem-

1. The principal issue is the propriety of the order granting indemnity to Hennessy-Three Star and Standard Oil from Standard Metal and Safety Flate. The factors to be considered in determining the right to indemnity have been discussed by this court on many occasions. Haney v. International Harvester Co. 294 Minn. 375, 201 N. W. 2d 140 (1972); Kenyon v. F. M. C. Corp. 286 Minn. 283, 176 N. W. 2d 69 (1970); Larsen v. Minneapolis Gas Co. 282 Minn. 135, 163 N. W. 2d 755 (1968); Thill v. Modern Erecting Co. 272 Minn. 217, 136 N. W. 2d 677 (1965); Daly v. Bergstedt, 267 Minn. 244, 126 N. W. 2d 242 (1964); Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960); Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. 2d 355, 43 A. L. R. 2d 865 (1954). Historically, indemnity was said to rest upon contract only, either express or implied. However, in Hendrickson v. Minnesota Power & Light Co. supra, we found the contract theory to be too narrow in scope and adopted the more modern view that "principles of equity furnish a more satisfactory basis for indemnity." 258 Minn. 371, 104 N. W. 2d 847. While cautioning that the circumstances under which indemnity is allowed are exceptional and limited, the court in Hendrickson proceeded to set forth certain situations in which indemnity may generally be granted (258 Minn. 372, 104 N. W. 2d 848):

"(1) Where the one seeking indemnity has only a derivative

nity as follows: "Contribution and indemnity are variant remedies used when required by judicial ideas of fairness to secure restitution. Although similar in nature and origin and having a common basis in equitable principles, they differ in the kind and measure of relief provided. Contribution requires the parties to share the liability or burden, whereas indemnity requires one party to reimburse the other entirely. Differing thus in their effect, these remedies are properly applicable in different situations. Contribution is appropriate where there is a common liability among the parties, whereas indemnity is appropriate where one party has a primary or greater liability or duty which justly requires him to bear the whole of the burden as between the parties."

or vicarious liability for damage caused by the one sought to be charged.

"(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

"(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

"(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved."

We have also at times discussed a standard for granting indemnity which turns on a determination of whether the proposed indemnitee has engaged in active or passive misconduct in causing the damage to the plaintiff. However, under some circumstances a more useful approach is to determine whether the conduct of the proposed indemnitee was a primary or secondary cause of the injury or damage. Under this latter standard a party may be granted indemnity even though he has engaged in active wrongdoing if his misconduct is clearly secondary when compared with the misconduct of the party from whom indemnity is sought.

We discussed this primary-secondary liability theory in Keefer v. Al Johnson Const. Co. 292 Minn. 91, 101, 193 N. W. 2d 305, 311 (1971), as follows:

"* * * [T]he difference between primary and secondary liability, as used in determining the right of indemnity, is based, not on a difference in degrees of negligence or on any doctrine of comparative negligence, but on the difference in the character or kind of wrongs which caused the injury and in the nature of the legal obligation owed by each wrongdoer to the injured person."

Therefore, it is apparent that, in determining the right to indemnity in this case, it is important to compare the kinds of wrongs involved and the nature of the obligations breached by each wrongdoer. Standard Metal[2] argues that Hennessy-Three Star and Standard Oil are not entitled to indemnity principally because they prepared and circulated a flyer describing the Safety Flater device in which they made an express warranty which the jury found they had breached. In other words, argues Standard Metal, the distributors have engaged in active and primary wrongdoing by making and breaching an express warranty.

In making this argument, Standard Metal relies principally upon Sylvestri v. Warner & Swasey Co. 398 F. 2d 598 (2 Cir. 1968). In the Sylvestri case, one of the defendants, Warner & Swasey Company, was the manufacturer of a backhoe device designed to be attached to a tractor and intended principally for use in digging ditches. However, Warner prepared and circulated an advertising brochure which showed a picture of the backhoe being used to lift sections of pipe. The brochure also contained a printed statement to the effect that the backhoe was suitable for such lifting maneuvers. Another defendant, Comad, Inc., assembled the backhoe to a tractor and sold it to the plaintiff who was injured while attempting to use the backhoe as a lifting device. Comad was found liable in negligence and Warner, for breaching an express warranty. Warner claimed indemnity from Comad, which was denied. The denial was based on the court's conclusion that New York law required one seeking indemnity to have occupied a completely passive role, i.e., to have been held strictly liable without fault, and upon the additional ground that Warner, as manufacturer, in effect admitted at trial that it knew that the backhoe would not perform in the manner indicated in the brochure. As stated herein, this court has not taken the position that the proposed indemnitee must have occupied a com-

---

[2] Safety Flate, Inc., has not appealed to this court and has made no appearance during these proceedings.

pletely passive role.[3] Further, the Sylvestri case may be distinguished on the grounds that Hennessy-Three Star and Standard Oil did not manufacture this device, never tested it, and did not make an express warranty that it could safely be used for a purpose other than that for which it was primarily intended.

Hennessy-Three Star and Standard Oil contend that, while the flyer may well be an express warranty, it contained no additional affirmations or promises beyond those which already were included in the implied warranty of merchantability which accompanied the product from the manufacturers. See, Minn. St. 336.2—314. In Farr v. Armstrong Rubber Co. 288 Minn. 83, 179 N. W. 2d 64 (1970), certain of the plaintiffs were injured when a truck in which they were riding left the road as the result of a tire blowout. The defendants were the manufacturer of the tire and the seller of the tire. After verdicts against both defendants, the seller was granted indemnity from the manufacturer. The manufacturer, on appeal, claimed the seller was not entitled to indemnity. In affirming the right of the seller to indemnity, we said (288 Minn. 96, 179 N. W. 2d 72):

"* * * The only statement made by the agent of [the seller] is that the tires would be adequate, and this statement is nothing more than a reaffirmance of what is required under an implied warranty of merchantability, that is, fitness for the ordinary purposes for which such goods are used."

While a written express warranty was prepared and circulated by the distributors in this case, thereby placing them in a position of some active participation beyond merely selling the product, it essentially did nothing more than reiterate the guarantees already encompassed within the implied warranties which accompany any product produced by a manufacturer, i.e., that the product is fit for the ordinary purposes for which such goods

---

[3] The New York Court of Appeals has recently abandoned its reliance upon the active-passive test. Dole v. Dow Chemical Co. 30 N. Y. 2d 143, 331 N. Y. S. 2d 382, 282 N. E. 2d 288 (1972).

are to be used. Nothing contained in the flyer encouraged the buyer to use the device in any manner other than that for which it was intended. Nothing contained in the flyer caused the accident or made the occurrence of the accident more likely. While the reference to insurance underwriters in the flyer was gratuitous, we do not believe that reference should be deemed to create an independent primary role on the part of the distributors sufficient to preclude their right to indemnity under these facts.

In summary, a study of our decisions reveals that indemnity is an equitable doctrine which does not lend itself to hard-and-fast rules and must turn on the facts of each case. In comparing the activities and obligations of the defendants in this case, we hold that the trial court correctly ordered that Hennessy-Three Star and Standard Oil were entitled to indemnity from the manufacturers of the product. We believe their role in the events leading to the injury was clearly of a secondary nature. The distributors sold the Safety Flater to the customer, but it was fabricated by Standard Metal and shipped directly to the customer by Safety Flate. The distributors did not assemble, examine, test, or alter the product. The flyer distributed by them does not, in our opinion, constitute a sufficient basis to deprive them of indemnity. At the time of the accident, the product was being used for exactly the purpose intended by the manufacturers and simply did not perform as its manufacturers implicitly warranted that it would.

The issue is not the liability of the distributors to the injured plaintiff but their right to indemnification from the manufacturers. We affirm the order of the trial court granting such indemnity.

2. Standard Metal claims the right to indemnity from Safety Flate. The trial court held that as comanufacturers Standard Metal and Safety Flate were in pari delicto and were not responsible in indemnity to each other. Without further extension of this opinion, it is sufficient to say that based upon the facts and

362

circumstances discussed herein we are in agreement with the trial court.

Because of our disposition of these indemnity questions, it is unnecessary to discuss or decide other issues raised by the parties.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.