# STANLEY L. SORENSON v.
# SAFETY FLATE, INC., AND OTHERS.

235 N. W. 2d 848.

December 5, 1975—No. 45236.

*Alderson, Catherwood, Ondov & Leonard* and *Gary E. Leonard,* for appellant.

*Lasley, Gaughan, Reid & Stich* and *Robert T. Stich,* for respondents.

Heard before Otis, Peterson, and Scott, JJ., and considered and decided by the court en banc.

Scott, Justice.

This is an appeal by defendant Standard Oil from a dismissal of its cross-claim to recover attorneys fees from codefendants Jack P. Hennessy Company and Three Star Sales Corporation in a personal injury-products liability case. On May 24, 1972, plaintiff Stanley L. Sorenson and the Hartford Accident and Indemnity Company (intervenor) obtained a judgment for breach of express warranty against Jack P. Hennessy Company, Three Star Sales Corporation, and Standard Oil, a division of American Oil Company. Plaintiff also obtained a judgment against Safety Flate, Inc., and Standard Metal Products Company. All defendants cross-claimed against each other. On June 5, 1972, the trial court granted the cross-claim for indemnity asserted by Jack P. Hennessy Company and Three Star Sales Corporation against Safety Flate, Inc., and Standard Metal Products Company. The trial court also granted the cross-claim for indemnity asserted by Standard Oil against all other defendants. All other cross-claims were dismissed. On August 31, 1972, the trial court entered its order denying defendant Standard Metal Products Company's amended alternative motion for new trial, judgment notwithstanding the verdict, or an amended order for judgment. Defendant Standard Metal Products Company appealed from that order and the judgment entered on September 20, 1972. This court ruled on that appeal in Sorenson v. Safety Flate, Inc. 298 Minn. 353, 216 N. W. 2d 859 (1974). Standard Oil's cross-claim for attorneys fees and expenses against Jack

P. Hennessy Company and Three Star Sales Corporation was dismissed with prejudice on May 31, 1974, by the district court. Defendant Standard Oil appeals from that order and the judgment entered thereon.

The issues presented are as follows:

1. Is a purchaser entitled to recover attorneys fees and expenses from a seller where plaintiff claims a breach of identical express warranties by both purchaser and seller?

2. Does a contract for indemnity against claims based on negligence of seller-indemnitor entitle purchaser-indemnitee to recover attorneys fees and expenses from seller in an action where plaintiff claims a breach of express warranty by purchaser?

3. Does failure by defendant to tender defense to codefendant preclude recovery for attorneys fees in a cross-claim brought by defendant for indemnity?

The facts of this case are set out in detail in Sorenson v. Safety Flate, Inc. *supra*. Plaintiff Sorenson was injured when a ring retainer known as a "Safety Flater" blew off the rim of a tire he was inflating while employed at Jay's Truck Stop in Albert Lea, Minnesota. The device was manufactured by Safety Flate, Inc., and Standard Metal Products Company. Jack P. Hennessy Company, an Illinois corporation, which later merged with Three Star Sales Corporation, also an Illinois corporation, distributed the ring retainer. (Hereinafter these corporations will be referred to as Hennessy-Three Star.) Standard Oil purchased a "Safety Flater" from Hennessy-Three Star and sold the device to Jay's Truck Stop, Sorenson's employer. The contract between Standard Oil and Hennessy-Three Star contained the following terms:

"DEFECTIVE MATERIAL:

\* \* \* \* \*

"Seller warrants that the merchandise sold by Seller to Buyer hereunder will be of merchantable quality; will conform to applicable specifications, drawings, or descriptions furnished by Buyer; will be free from defects in material and workmanship;

and will be sufficient and fit for the purposes intended by Buyer. Buyer's approval of designs furnished by Seller shall not relieve Seller of its obligations under this paragraph. The warranties of Seller, together with its service guarantees, shall run to Buyer and its jobbers, dealers, and customers. In addition, *Seller shall indemnify and hold Buyer and its employees, jobbers and dealers harmless from and against any and all claims, suits, judgments, or expenses, including attorneys' fees, which are grounded or based wholly or partially upon alleged negligence or actual negligence in the formulation or manufacture of any merchandise sold by the Seller to Buyer hereunder, or upon any alleged defect or actual defect in the merchandise, or upon a claim that the merchandise was not of merchantable quality or that it was not fit for the purposes for which it was intended."* (Italics supplied.)

In selling the "Safety Flater" to Jay's Truck Stop, Standard Oil presented a flyer printed by Hennessy-Three Star containing an express warranty, and provided to Standard Oil by Hennessy-Three Star.

After incurring injury from the ring retainer, Sorenson brought an action against the various defendants alleging negligence, breach of implied warranties, strict liability, and, as to defendants Standard Oil Company and Hennessy-Three Star, breach of express warranty in the sale to Jay's Truck Stop.

The various defendants in interposing the cross-claims sought indemnity and contribution from each of the other defendants. Among these cross-claims was a claim asserted by defendant Standard Oil against Hennessy-Three Star for indemnity and attorneys fees and expenses. Standard Oil provided its own defense to all claims brought against it and did not tender defense to defendant Hennessy-Three Star at any time. The trial court awarded indemnity to defendant Standard Oil against Hennessy-Three Star with respect to verdicts in favor of plaintiffs under common-law indemnity.

In Sorenson v. Safety Flate, Inc. *supra,* this court compared the nature of the obligations to plaintiff breached by defendants Standard Oil and Hennessy-Three Star. Discussing the breach of express warranty by Standard Oil, this court stated:

"One of the purchasers of Safety Flaters from Hennessy-Three Star was defendant Standard Oil, a division of American Oil Company. Standard Oil in turn sold the device directly to users. In making its sales presentation to Standard Oil, Hennessy-Three Star used a descriptive printed 'flyer' which they had prepared, illustrating and describing the Safety Flater. The flyer contained the following language:

'Whether you change one or fifty tires a day the danger of exploding lock rings always exists. Everyone knows the damage or serious injury that may occur. It only has to happen once. THE THREE STAR SAFETY FLATER will protect your man and enable you to meet insurance underwriters specifications for safety.'

The flyer also depicted alternative ways of protecting oneself while changing a truck tire, but suggested that the Safety Flater was the preferable method. No test of the Safety Flater was ever made by either Hennessy-Three Star or Standard Oil.

"Plaintiff's employer, who had purchased the Safety Flater for use in his service station, testified that he had seen and relied upon the flyer prior to his purchase of the Safety Flater from Standard Oil. He said he did not know where the flyer came from, but assumed that it had been provided by Standard Oil." 298 Minn. 355, 216 N. W. 2d 861.

This court further noted:

"While a written express warranty was prepared and circulated by the distributors in this case, thereby placing them in a position of some active participation beyond merely selling the product, it essentially did nothing more than reiterate the guarantees already encompassed within the implied warranties which accompany any product produced by a manufacturer, i. e., that

the product is fit for the ordinary purposes for which such goods are to be used." 298 Minn. 360, 216 N. W. 2d 863.

Because the acts of Standard Oil were found to be secondary to those of Hennessy-Three Star, this court affirmed an order granting indemnity to Standard Oil for damages incurred by plaintiff. No issue was raised in that case regarding attorneys fees.

■ The rule in Minnesota regarding the award of attorneys fees in an indemnity case was stated in Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 233, 167 N. W. 800, 802 (1918), where the Minnesota court recited the holding of Inhabitants of Westfield v. Mayo, 122 Mass. 100, 23 Am. Rep. 292 (1877):

" 'If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of damages recovered, but for all reasonable and necessary expenses incurred in such defense.' Only in such case is there a right to recover such expenses."

Defendant Standard Oil argues that its position in seeking attorneys fees and expenses is similar to the fact situation in the case of O'Connell v. Jackson, 273 Minn. 91, 140 N. W. 2d 65 (1966). In O'Connell, defendant Jackson made a false express warranty to defendant Decker which Decker in turn transmitted to plaintiff. The court found that Jackson's act of misrepresentation was the sole cause of plaintiff's entire loss. The court noted that "in defending the action Decker was defending only charges based upon Jackson's original breach of warranty." 273 Minn. 97, 140 N. W. 2d 69. The O'Connell case is unlike the present situation, however, in that there is no question of responsibility for misrepresentation in this case. There is no false warranty

which was repeated by a second defendant who did not know the statements were false. In O'Connell, moreover, Decker tendered defense of the case to Jackson, a point which will be discussed below. The question in the present case is whether the breach of obligations to plaintiff made by defendant Standard Oil is a sufficiently separate act from that of defendant Hennessy-Three Star to justify a denial of attorneys fees.

The O'Connell case was cited by this court in the case of Farr v. Armstrong Rubber Co. 288 Minn. 83, 179 N. W. 2d 64 (1970), in which several plaintiffs sued Armstrong Rubber Company and Elmer N. Olson Company for personal injuries resulting from the blowout of a tire. Armstrong was found liable on the basis of strict liability and negligent failure to warn. Olson was found liable to plaintiff either on the grounds of breach of implied warranty or strict liability in tort. The court noted that Olson's liability stemmed "solely from its passive role as the retailer of a defective product furnished to it by the manufacturer." Nevertheless, the court held:

"In cases where a party seeking indemnity has been required to defend claims arising out of another's wrongful conduct and also to defend accusations which encompass his separate wrongful acts, the court may properly disallow attorney's fees in indemnity action." 288 Minn. 97, 179 N. W. 2d 72.

In the present case, Standard Oil is defending against a claim involving its own breach of express warranty. This court found that the express warranty made by Standard Oil was identical to that made by Hennessy-Three Star in Sorenson v. Safety Flate, Inc. *supra*. The Farr case makes it clear, however, that the mere reiteration of a warranty can be a sufficiently independent wrongful act to justify a denial of attorneys fees even if the warranty involved is only a warranty implied by law. Minn. St. 336.2—314(2)(c).

■ As noted above, defendant Standard Oil purchased the "Safety Flater" from Hennessy-Three Star subject to an in-

demnity contract. Such contracts have been upheld in Minnesota and are to be given "a fair construction that will accomplish its stated purpose." N. P. Ry. Co. v. Thornton Bros. Co. 206 Minn. 193, 196, 288 N. W. 226, 227 (1939). The question in this case is whether plaintiff's claim against Standard Oil is within the language of the contract. Standard Oil argues that the action was "grounded or based [wholly] or partially upon alleged negligence or actual negligence in the formulation and manufacture of any merchandise" sold by Hennessy-Three Star to Standard Oil. The indemnity clause relied upon by Standard Oil, however, appears in the contract under the heading "DEFECTIVE MATERIAL"; thus, the section contemplates a claim against Standard Oil for defective material, workmanship, manufacture, or design. Because the clause makes no explicit reference to indemnification for breach of express warranty, the contract cannot be found to include indemnity for attorneys fees resulting from Standard Oil's own act of giving an express warranty to a buyer.

■ The trial court found that under the rule of Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. *supra*, tender of defense is required as a condition precedent to obtaining indemnification for attorneys fees. Defendant Standard Oil argues in part that this obligation should be excused on the basis of the holding in Singer v. Dorr, 272 F. Supp. 931 (E. D. La. 1967). The Singer case involved a suit for wrongful death resulting from an accident on a barge. Defendant barge owners were confronted with an assertion by the tug owner that there can be no recovery of attorneys fees unless the barge owners tendered defense of the action to the tug owner. The court held:

"* * * Although it is true that in many of the shipowner-stevedore cases, including *Caswell (Strachan)*, supra, the shipowner does tender the defense, we cannot see that the tender is critical. * * * It may well be, of course, that if the third-party defendant offers to defend against the plaintiff's claim, and that offer is rejected by the defendant, there can be no recovery of

attorneys' fees, since the expense could have been avoided at no cost to the original defendant in those circumstances. * * * But the third-party defendant should not be allowed to oppose the claim against him and then later be heard to imply that he would have accepted the defense to plaintiff's claim had it been tendered—for the third-party defendant to assume the defense, it would have to admit, for purposes of the third-party claim, its liability to defendant. Thus, rather than insist on a formal tender of the defense, we think it fair to consider the third-party claim and request for attorneys' fees as an implied invitation to the third-party defendant to admit its liability on the third-party claim and to offer to defend against the plaintiff's claim, and conclude that the third-party claim, in and of itself, without a formal tender of the defense, is sufficient action by the defendant to permit its recovery of attorneys' fees. Expressed differently, the burden is on the third-party defendant to offer to defend (or to accept a tender of the defense if made) in order to avoid imposition of liability for attorneys' fees, and not on the defendant to tender the defense in order to recover attorneys' fees. Here, not only was there no offer to defend, but Dorr also actively pursued its own cross claim against the barge interests." 272 F. Supp. 936.

It is important to note, however, that the Singer court determined that, on the facts of that case, it was fair to construe the third-party claim and request for attorneys fees as an "implied invitation to the third-party defendant * * * to offer to defend." No such invitation can be implied in the present case where Standard Oil insisted on its own defense. Hennessy-Three Star was never given an opportunity to control the litigation, nor could Hennessy-Three Star have minimized or avoided the attorneys fees incurred by Standard Oil. Much of the litigation expense incurred by Standard Oil, moreover, was spent in suing to establish a contract of indemnity. While this is not a determining feature, since such a suit is usually brought by a separate action and not combined in one suit as here, it still would

present an inseparable item of questionable expense if Standard Oil were to prevail. See, Abbey v. Farmers Ins. Exch. 281 Minn. 113, 160 N. W. 2d 709 (1968), where attorneys fees were held not recoverable.

Defendant Standard Oil also asserts that tender of defense is not a prerequisite to recovery of attorneys fees pursuant to a contract for indemnity where the contract contains no such requirement. In view of the determination above that indemnity in this situation is outside the scope of the contract between Standard Oil and Hennessy-Three Star, it is unnecessary to reach this issue. We therefore hold that Standard Oil is not entitled to attorneys fees and expenses either under common-law or contractual indemnity. The trial court is affirmed.

Affirmed.