# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01860-SCT

*MICROTEK MEDICAL, INC.*

*v.*

*3M COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2005 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BRENDA B. BETHANY |
| | C. MICHAEL ELLINGBURG |
| ATTORNEYS FOR APPELLEE: | MELODY McANALLY |
| | W. WAYNE DRINKWATER, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED; ON CROSS-APPEAL: AFFIRMED - 10/05/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    The 3M Company sued Microtek Medical, Inc. for indemnification of attorneys' fees incurred by 3M in defending a personal injury suit in Pennsylvania.   The Chancery Court of Lowndes County, Mississippi, granted summary judgment in favor of 3M and awarded 3M in excess of $223,000 in attorneys' fees; however, the chancellor refused to award prejudgment interest in 3M's favor.   From this chancery court judgment, Microtek appeals the chancellor's assessment of attorneys' fees against it, and 3M cross-appeals the chancellor's refusal to assess prejudgment interest against Microtek.  Finding no error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Microtek and 3M entered into a contract in May, 1997 wherein Microtek agreed to manufacture the ArthroSteri surgical drape for resale by 3M.  3M marketed the product as its own.[1]  The contract contained an indemnification clause which provided that Microtek would indemnify 3M for losses incurred due to any accident or injury sustained by a third party as a result of Microtek's breach of warranty or negligence. Furthermore, the contract provided that Microtek would conduct all of the required safety inspections of the surgical drapes and warrant them for fitness.   Microtek also agreed to purchase $5,000,000 in liability insurance to cover indemnification expenses of suits arising worldwide.    Additionally, the contract contained a choice of law provision that Minnesota law would govern substantive issues.

¶3.     Subsequently, Mary Catherine Chapley of Pennsylvania filed a personal injury suit against 3M, her doctor, and her hospital in the Court of Common Pleas of Philadelphia County, Pennsylvania, seeking damages for a nerve injury during her knee surgery that she claimed was caused by a defective surgical drape which Microtek manufactured.  Microtek was not a party to the suit, which asserted claims of both negligence and strict liability against 3M.   Upon being notified of the suit, 3M tendered the defense of the claim to Microtek and Microtek's insurer, claiming that the contract required Microtek to defend 3M in suits concerning the surgical drapes.  Microtek and its insurer refused to defend 3M, so 3M retained counsel at its

---

[1]Microtek was responsible for the design, manufacture, assembly, and inspection of the ArthroSteri surgical drape.   Another company, Owens & Minor, Inc., was responsible for distribution of the ArthroSteri surgical drape.  3M simply marketed the drapes in the chain of commerce under its brand name.

own expense to defend the *Chapley* case. The Pennsylvania trial court granted summary judgment in favor of 3M, which thus had the practical effect of a finding that Microtek's product was not defective.[2]

¶4.     3M then filed suit against Microtek in the Chancery Court of Lowndes County, Mississippi, for indemnification according to the contract. Since no damages were paid in *Chapley* inasmuch as summary judgment was granted in 3M's favor, 3M demanded only that Microtek reimburse the attorneys' fees incurred by 3M in its defense of the *Chapley* case, with the total amount of reimbursement requested being $223,031.09. The chancellor found that 3M was entitled to attorneys' fees as a matter of law and granted summary judgment in favor of 3M. However, the chancellor declined to award 3M prejudgment interest, and he did not state a reason for his denial in the order. Microtek appeals the chancellor's grant of summary judgment, and 3M cross-appeals the chancellor's denial of prejudgment interest.

## DISCUSSION

¶5.     The parties stipulated in the contract that Minnesota law would control substantive issues. However, Mississippi law will control procedural issues. *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 433 (Miss. 2006) (citing *Ford v. State Farm Ins. Co.*, 625 So.2d 792, 793 (Miss. 1993)). *See also Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.,* 743 So.2d 954, 960 (Miss. 1999). This Court reviews a grant or denial of summary

---

[2]The Pennsylvania trial court granted summary judgment in favor of 3M because Chapley's expert witness report stated that the drape was not defective. In fact, the report stated that Chapley's doctor's failure to apply the drape appropriately and failure to monitor the use of the drape during the surgery caused Chapley's injury.

judgment applying a de novo standard. *Stuckey v. Provident Bank*, 912 So.2d 859, 864 (Miss. 2005); *Burgess v. BankPlus*, 830 So.2d 1223, 1227 (Miss. 2002); *Richardson v. Methodist Hosp.*, 807 So.2d 1244, 1246 (Miss. 2002).

¶6.     In considering the language of the contract between Microtek and 3M, we must decide whether 3M is entitled to indemnification from Microtek for attorneys' fees incurred by 3M in its defense of the Pennsylvania lawsuit.    If this Court decides that 3M is entitled to attorneys' fees, we must then determine whether the amount of attorneys' fees awarded was reasonable, and we must also decide whether 3M is entitled to prejudgment interest.

## MICROTEK'S DIRECT APPEAL

### I.     WHETHER 3M IS ENTITLED TO INDEMNIFICATION FOR ATTORNEYS' FEES

¶7.     We first consider the issue of whether 3M is entitled to Microtek's indemnification under the contract as a result of the attorneys' fees incurred by 3M in defending the Pennsylvania lawsuit.  The contract clause in question states:

> Seller shall be responsible for and shall indemnify Buyer against all losses, claims, expenses, or damages which may result in any way from any accident, injury, or damage to either person or property or from death of any persons by reason of Seller's breach of warranty described in Article 11 or any negligent act or omission on the part of Seller, its agent, employees, or subcontractors except to the extent that the accident, injury, damage, or death is due to negligence of Buyer.

¶8.     Microtek argues that the plain language of the contract requires that Microtek be held liable for breach of warranty or negligence before it is responsible for indemnification; therefore, summary judgment does not trigger indemnification because there was no finding

4

of wrongdoing on the part of Microtek. Specifically, Microtek states that a judgment or settlement must be "by reason of" Microtek's breach of warranty or negligence.

¶9.    Conversely, 3M argues that the plain language of the contract requires that Microtek is "responsible for" and must indemnify all "losses, claims, expenses, or damages...by reason of [Microtek's] breach of warranty" or negligence. In other words, 3M argues that Microtek is required to defend 3M in any claim of breach of warranty or negligence resulting from the products themselves and not 3M's own negligence. 3M further asserts that Microtek must indemnify 3M for any judgment or settlement and also reimburse 3M for any fees or expenses incurred.

¶10.    The parties agree that since summary judgment was granted, no damages were awarded in favor of the Pennsylvania plaintiff requiring indemnification by Microtek. Therefore, the true issue on appeal is not whether Microtek had to indemnify damages, but instead, whether 3M is entitled to reimbursement for attorneys fees when the Pennsylvania summary judgment was granted in its favor. Stated differently, based on the language of the contract, this Court must decide whether the phrase "shall be responsible for" is synonymous with "defend."

¶11.    In considering Minnesota law, a contract is interpreted according to its plain and ordinary meaning. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 67 (Minn. 1979) (citing *Employers Mut. Liab. Ins. Co. v. Eagles Lodge*, 282 Minn. 477, 479, 165 N.W.2d 554, 556 (1969); *Bass v. Ring*, 215 Minn. 11, 15, 9 N.W.2d 234, 236 (1943)). Furthermore, the intent of the parties should be "ascertained ... in accordance with the obvious purpose of the contract...as a whole." *Republic Nat'l Life Co. v. Lorraine Realty Corp.*, 279 N.W.2d

5

349, 354 (Minn. 1979) (citing *Cement, Sand & Gravel Co. v. Agricultural Ins. Co.*, 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947)). When parties enter into contracts, they intend for every provision "to have some effect." Therefore, "any interpretation which would render a provision meaningless should be avoided." *Indep. Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.*, 123 N.W.2d 793, 799-800 (Minn. 1963); *Casey v. Brotherhood*, 197 Minn. 189, 266 N.W. 737 (1936); *Commercial Union Assur. Co. Ltd. v. Foley Brothers*, 141 Minn. 258, 169 N.W. 793 (1918).

¶12. We are not directed by the parties to any case on point in Minnesota or Mississippi which states that an indemnitee is entitled to attorneys fees upon the grant of summary judgment in its favor. The parties cite numerous Minnesota cases which are not wholly applicable to the case sub judice; however, these cases offer valuable guidance as we consider these critical issues.

¶13. In his order granting summary judgment, the Lowndes County chancellor made the following conclusions of law:

> The rules governing requisites, validity and construction of contracts generally apply to indemnity contracts. *Sorenson v. Safety Flate, Inc*. 306 Minn. 300, 235 N.W.2d 848 (1975).

> The intent of the parties whose contract is to be ascertained so as to give the contract a meaning in accordance with the obvious purpose of the contract. *Republic Nat'l Life Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979).

> Indemnity language to be given a fair construction and will accomplish its stated purpose. *Sorenson v. Safety Flate, Inc.* 235 N.W.2d 848, 852 (Minn. 1975).

The 1997 contract required Microtek to purchase liability insurance including products liability. An insurer has the duty to defend and a duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W. 2d 411, 415 (Minn. Ct. App. 1993).

The chancellor concluded:

Although an excellent argument in opposite was made by Microtek, the Court concludes that the 1997 contract was to protect 3M from the cost of expenses arising out of claims such as Ms. Chapley's. Microtek and its insurer were offered the opportunity to defend the Chapley claim.

¶14. We agree with the chancellor. The plain language of the contract stated that Microtek was "responsible for...all losses, claims, expenses, or damages...by reason of [Microtek's] breach of warranty...or...negligent act." Based upon the plain language of the contract, and giving every part meaning as required by Minnesota law, we are firmly convinced that the phrase "responsible for" is synonymous with "defend" in order to avoid an interpretation that would render part of the contract meaningless. The chancellor ruled that the purpose of the contract, as a whole, was to hold 3M harmless in all claims of negligence and strict liability concerning the surgical drapes. We agree.

¶15. Microtek also requests this Court to reverse the chancellor's grant of summary judgment because, as it cites in its brief, the chancellor confused an insurer's duty to defend and indemnify with regular contractual principles. In other words, Microtek argues that the chancellor wrongly ruled that Microtek should act like an insurance company because it had entered into an indemnification agreement. It is obvious that Microtek misinterprets the chancellor's order. Pursuant to the contract, Microtek was required to purchase liability insurance to cover any claims worldwide. 3M tendered defense of the claim in *Chapley* to

both Microtek and its insurer. In his ruling the chancellor was obviously referring to his belief that Microtek's insurer's had a duty to defend 3M in *Chapley*.

¶16. Microtek also argues that 3M is equitably estopped from seeking indemnity in this case because 3M received summary judgment in its favor in *Chapley*, and thus there was no finding of liability for which Microtek was responsible. In relying on *Koyot v. Cont. Ins. Co.*, 1980 U.S. Dist. LEXIS 15105 (D. Minn. 1980), Microtek argues that it is entitled to the benefit of the Pennsylvania summary judgment in 3M's favor and that this issue cannot be relitigated. However, the doctrine of equitable estoppel is wholly inapplicable to today's case. *See B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So.2d 483, 492-93 (Miss. 2005); *Rawls Springs Utility Dist. v. Novak*, 765 So.2d 1288, 1292 (Miss. 2000); *Trosclair v. Miss. Dep't of Transp.*, 757 So.2d 178, 181 (Miss. 2000). The issue in today's case is whether Microtek is liable for attorneys fees based on the language of the contract between Microtek and 3M. The issues in *Chapley* were negligence and strict liability.

¶17. Finally, Microtek argues that 3M was sued for its own negligence; therefore, under the specific contract language, Microtek cannot be held liable for 3M's own negligence. The parties cite in their briefs *Sorenson v. Safety Flate, Inc.,* 235 N.W.2d 848 (Minn. 1975) and *Farr v. Armstrong*, 179 N.W.2d 64 (Minn. 1970); however, both of these cases have been overruled where formerly applicable to the case sub judice. Where there is an indemnification agreement, "it is the parties' intent which controls the propriety of attorney fees." *Mortgage*

*Guar. Ins. Corp. v. Forsythe Appraisers, Inc.*, 1992 Minn. App. LEXIS 408, at *7 (Minn. Ct. App. Apr. 21, 1992); *see also* **Tolbert v. Gerber Indus., Inc.,** 255 N.W.2d 362 (Minn. 1977).

¶18.    Microtek agreed to be responsible for the warranty and inspection of the ArthroSteri surgical drapes.    The warranty clause of the contract between Microtek and 3M states in pertinent part:

> In addition to any warranty implied by fact or law, [Microtek] expressly warrants all Product(s) are free from defects in design, materials, and workmanship; conform strictly to specifications and approved samples, if any; are fit and sufficient for the purpose intended; and are merchantable.

Furthermore, the inspection clause states in part:

> [Microtek] acknowledges [3M] will not perform any regular inspection of Product(s) upon receipt, but will rely on [Microtek] to specifically meet the Product(s) specifications.

Thus, it is clear that the parties intended for Microtek to have sole control of and responsibility for the safety of the surgical drapes.

¶19.    The plaintiff in *Chapley* asserted a myriad of allegations in her complaint.    It is Microtek's contention that if the plaintiff asserted even one allegation from which 3M might be independently responsible, then 3M had the duty to defend itself in the suit.    However, a review of the allegations in the complaint causes us to conclude  that all of the allegations would have been attributed to Microtek had it been a joint tortfeasor in *Chapley*.

¶20.    Chapley's negligence claims were:

> 1.    Failing to properly design, manufacture, assemble, inspect and/or distribute the ArthroSteri surgical drape;

2.  Failing to include with the surgical drape the appropriate warnings and/or instructions regarding the correct use of the drape, including, but not limited to, the proper placement of the drape to avoid neurovascular compromise and damages;

3.  Failing to advise the operating room staff about the proper placement of the drape to avoid neurovascular compromise and damage;

4.  Failing to disclose information it knew or should have known about problems with and/or defects in the ArthroSteri surgical drape.

5.  Failing to warn the Plaintiffs of the risk imposed by the use of the ArthroSteri surgical drape;

6.  Negligence per se;

7.  Res ipsa loquitur; and

8.  Such other acts of negligence and carelessness as shall appear during the course of discovery.

¶21.  Chapley's strict liability claim includes the following:

1.  The ArthroSteri surgical drape was defectively designed;

2.  The ArthroSteri surgical drape was defectively manufactured;

3.  The ArthroSteri surgical drape lacked an element to make it safe;

4.  The ArthroSteri surgical drape lacked an adequate and appropriate warning;

5.  The ArthroSteri surgical drape was manufactured and sold in an unreasonably dangerous condition; and

6.  Such other defects as shall appear during the course of discovery.

¶22.  The allegations are based on negligence and strict liability for the design, manufacture, assembly, inspection, and distribution of the ArthroSteri surgical drapes.[3]  3M simply marketed the product using its name.  3M was the named party in ***Chapley*** because its name, not Microtek's name, appears on the surgical drapes.  Therefore, it is apparent that the allegations are not based on 3M's own negligence, even though 3M was the party named in the suit rather than Microtek.  Because the parties intended Microtek to be responsible for warranties and

---

[3]Microtek designed, manufactured, assembled, and inspected the ArthroSteri surgical drape.  Owens & Minor, Inc., distributed the ArthroSteri surgical drape.  There is no mention in the record of any allegations at any time against Owens & Minor, Inc.

10

inspections of the surgical drapes, 3M should not be held liable because the allegations do not stem from 3M's own negligence. Therefore, 3M did not have a duty to defend itself in this suit.

¶23. After applying Minnesota case law to the facts of today's case, we find that the chancellor properly granted summary judgment in favor of 3M. This issue is thus without merit.

## II. WHETHER THE AMOUNT OF ATTORNEYS' FEES WAS REASONABLE

¶24. Although, pursuant to the contract between Microtek and 3M, we applied Minnesota law on the indemnification issue, we are not so bound by Minnesota law on the issue of the reasonableness of the attorneys' fees awarded by the chancellor to 3M.

> Regardless of the substantive law to be applied, Mississippi courts will apply their own procedural law. *Ford v. State Farm Ins. Co.*, 625 So.2d 792, 793 (Miss. 1993). However, few laws are classified as procedural. In addition to the Mississippi Rules of Civil Procedure, and Rules of Evidence, we have only found the definition of "procedural" to include statutes of limitations, awards of attorney's fees and awards of prejudgment interest. *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 960 (Miss. 1999) (finding awards of attorney's fees and prejudgment interest procedural); *Ford*, 625 So.2d at 793-794 (finding statutes of limitations procedural).

*Zurich*, 920 So.2d at 433. Thus, finding this issue to be procedural, we will apply Mississippi law in determining the issue of the reasonableness of the amount of attorneys fees assessed against Microtek in favor of 3M. In this state, we review the issue of the reasonableness of the trial court's award of attorneys fees applying an abuse of discretion standard. This Court will not disturb the finding of the trial court on such an issue unless it is manifestly wrong or

exhibits a manifest abuse of discretion. *Mabus v. Mabus*, 910 So.2d 486, 488 (Miss. 2005) (citing *Mauck v. Columbus Hotel Co.*, 741 So.2d 259, 269 (Miss. 1999); *Bredemeier v. Jackson*, 689 So.2d 770, 778 (Miss. 1997)). In this context, the word "manifest" has been defined to mean "unmistakable, clear, plain, or indisputable." *Mosley v. Mosley*, 784 So.2d 901, 904 (Miss. 2001) (citing *Black's Law Dictionary* 963 (6th ed. 1990); *Turpin v. Turpin*, 699 So.2d 560, 564 (Miss. 1997) (quoting *Magee v. Magee*, 661 So.2d 1117, 1122 (Miss. 1995)).

¶25. Microtek urges this Court to consider Rule 1.5(a) of the Mississippi Rules of Professional Conduct. The factors of Rule 1.5(a) are also known as the *McKee* factors. *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982). Rule 1.5(a) states:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the location for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Miss. R. Prof'l Conduct 1.5(a). In *BellSouth v. Board of Supervisors*, 912 So.2d 436 (Miss. 2005), we stated that the trial judge could not make a "blanket endorsement" of attorneys fees. *Id.* at 447. On the other hand, we will not hesitate to affirm the chancellor's award of

attorneys' fees, and its amount, when based on substantial credible evidence. *Mabus*, 910 So.2d at 492.

¶26.     Microtek asks this Court to reverse the chancellor's grant of attorneys' fees because it believes that the amount is unreasonable.    Further, Microtek believes that the chancellor made a "blanket endorsement" regarding the amount of attorneys fees requested. We disagree.

¶27.     The chancellor applied Minnesota law in his grant of summary judgment, and the chancellor likewise applied Minnesota law in considering the award of attorneys' fees. The chancellor stated in his order:

> In determining the size of an attorney's fee, this Court must consider the time and effort required, novelty or difficulty of the issues, skill and standing of the attorney, value of the interest involved, results secured at trial, loss of opportunity for other employment, taxed party's ability to pay, customary charges for similar services, and certainty of payment. *Jadwin v. Kasul*, 318 N.W.2d 844 (Minn. 1982).

Microtek argues that Mississippi law should apply to procedural issues, such as attorneys' fees, and we agree.   However, the factors relied upon by the chancellor, in citing *Jadwin*, a Minnesota case, are virtually identical to the *McKee* factors.    Thus, the chancellor committed no error in relying upon the above enumerated factors in arriving at the appropriate amount of attorneys' fees to be assessed against Microtek and in favor of 3M.

¶28.     Microtek claims that 3M produced no evidence to support the reasonableness of the attorney's fees.   However, the chancellor found otherwise in his order:

> Offered in support of the claim for attorneys' fees is the affidavit of Debra Dunne, the Pennsylvania attorney who successfully defended 3M.   The affidavit includes as an Exhibit an itemization of the fees and expenses.   The Exhibit is

approximately an inch thick and is Exhibit 10 to Plaintiff's Motion for Summary Judgment.

************

Ms. Dunne's time and effort are included as an exhibit. Ms. Dunne's Motion for Summary Judgment and the exhibits in this case show the novelty and difficulty of the issues. The success of Ms. Dunne obviously shows her skill and standing as an attorney. Ms. Chapley's alleged serious injuries show the value of the interest involved. Ms. Dunne was successful and as shown by the time spent on the case, she lost the opportunity for other employment. Her hourly rate is $240.00 per hour which is reasonable. She certainly would have been and was paid by 3M.

3M clearly provided evidence to the Chancery Court on the issue of the appropriate amount of attorneys fees to be awarded. It is thus obvious that, as opposed to making a "blanket endorsement" of any proposal as to the amount of attorneys fees to be awarded, the chancellor painstakingly addressed the relevant factors. Accordingly, for these reasons, we find the amount of the chancellor's award of attorneys fees was based on substantial evidence and this action by the chancellor was not a manifest abuse of discretion. We find this issue to be without merit.

## 3M'S CROSS-APPEAL

### III. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY NOT AWARDING 3M PREJUDGMENT INTEREST

¶29. In its cross-appeal 3M asserts that the chancellor abused his discretion by not awarding 3M prejudgment interest on the award of attorneys' fees. Likewise, on this issue, we apply Mississippi law inasmuch as the issue of prejudgment interest is procedural and not substantive. *Zurich*, 920 So.2d at 433. *See also* **Sentinel**, 743 So.2d at 960. A judge's decision on the issue of whether to grant prejudgment interest is discretionary and is thus

reviewed by applying an abuse of discretion standard. ***Pub. Employees' Ret. Sys. v. Freeman***, 868 So.2d 327, 329 (Miss. 2004). In ***Preferred Risk Mutual Ins. Co. v. Johnson***, 730 So.2d 574 (Miss. 1999), we held that "prejudgment interest *may* be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith." ***Id.*** at 577 (citing ***Aetna Cas. & Sur. Co. v. Doleac Electric Co.***, 471 So.2d at 331) (emphasis added). "Prejudgment interest has been denied where there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor." ***Grace v. Lititz Mut. Ins. Co.***, 257 So.2d 217, 225 (Miss. 1972). "For prejudgment interest to be awarded, the party must make a proper demand for the interest in the pleadings, including the date that it was allegedly due." ***Id.***; *see also* ***Simpson v. State Farm Fire & Cas. Co.***, 564 So.2d 1374, 1380 (Miss. 1990).

¶30.    The trial judge no doubt has discretion to award prejudgment interest if (1) the amount of damages is fixed and (2) liability is undisputed.    However, 3M directs us to a case decided by the Court of Appeals, ***Estate of Baxter v. Shaw Associates***, 797 So.2d 396, 403 (Miss. Ct. App. 2001), and argues that prejudgment interest may be granted when damages are liquidated, even if they are disputed. The Court of Appeals in ***Baxter*** cited ***Simpson v. State Farm Fire & Casualty Co.***, 564 So.2d 1374 (Miss. 1990).    In ***Simpson***, this Court quoted from a "Hurricane Camille" case, which stated:

> We are of the opinion that where as in this case there is a justifiable dispute as
> to the amount of the loss, the insured is not entitled to interest until the amount
> of the claim has been made certain or liquidated.    However, we can envision
> cases where, in the discretion of the trial court interest should be allowed

although the amount of the loss is in dispute and for this reason we do not foreclose the allowance of interest in every case where the claim is unliquidated.

*Id.* at 1381 (quoting *Commercial Union Ins. Co. v. Byrne*, 248 So.2d 777, 783 (Miss. 1971)). In *Simpson*, this Court found that the trial court erred in not awarding prejudgment interest because the insured premises was admittedly "a total loss" and there was no dispute as to the amount of insurance coverage available. 564 So.2d at 1381. In *Byrne*, a case involving a suit by the insureds against their insurer for damage sustained to their home as a result of Hurricane Camille, this Court held that since there was "a justifiable dispute" concerning the amount of the damages sustained, the trial court correctly denied prejudgment interest. 248 So.2d at 783. Admittedly, in *Byrne*, this Court did not "foreclose" the possibility of a trial court, in the exercise of discretion, properly allowing prejudgment interest even when the "amount of the loss is in dispute." *Id.*

¶31. In *Grace v. Lititz Mutual Ins. Co.*, 257 So.2d 217 (Miss. 1972), this Court had before it another "Hurricane Camille" case involving damage sustained to an office building owned by two architects. The architects were insured under a policy of insurance which excluded loss due to "flood, surface water, waves, tidal water, or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not." *Id.* at 219. At issue was whether the destruction of the architects' building "was caused by the wind forces of Hurricane Camille or whether tidal water contributed to or aggravated the loss." *Id.* In *Grace*, this Court affirmed the trial court's denial of prejudgment interest and specifically

16

distinguished the *Byrne* exception, finding that, unlike the possible exception envisioned in *Byrne*, "there was a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor." *Id.* at 225.

¶32.    In the end, we find that since Microtek hotly disputed not only the amount of attorneys' awarded, but also whether 3M was even entitled to an award of attorneys' fees, and since the award of prejudgment interest, even where otherwise appropriate, is in the sound discretion of the trial judge, the chancellor did not abuse his discretion in denying 3M's request for prejudgment interest on his award of attorneys' fees.[4]

¶33.    However, our discussion concerning prejudgment interest does not end here, because 3M claims that the chancellor abused his discretion by not stating a reason in the order for denial of prejudgment interest.    The order simply states, that "[t]he Court exercises its discretion not to award prejudgment interest."    In its brief, 3M directs us to *Pace v. Owens*, 511 So.2d 489, 491-92 (Miss. 1987), in which we held:

> When a trial court makes no specific finding of fact, this Court often assumes that it resolved the fact issues in favor of Appellee. *Bryant v. Cameron*, 473 So.2d 174 (Miss. 1985); *Smith v. Todd*, 464 So.2d 1155, 1157 (Miss. 1985); *Marascalco v. Marascalco*, 445 So.2d at 1380, 1382 (Miss. 1984); *Cotton v. McConnell*, 435 So.2d 683 (Miss.1983); *Cheek v. Ricker*, 431 So.2d 1139, 1143 (Miss. 1983); *Blakeney v. Blakeney*, 244 So.2d 3, 4 (Miss. 1971). Further, when there are no specific findings of fact, we sometimes assume the trial judge made determinations of fact sufficient to support the judgment. *Rives v. Peterson*, 493 So.2d 316, 317 (Miss. 1986).    In such circumstances this Court must look to the evidence and see what state of facts, if any, will justify

---

[4]Microtek argues that 3M did not demand prejudgment interest in its complaint and therefore is not entitled to it.    However, based on our disposition of this issue in Microtek's favor, we deem it unnecessary to discuss this issue further.

17

the decree. ***Boatright v. Horton***, 233 Miss. 444, 447, 102 So.2d 373, 374 (1958).

511 So.2d at 491-92. By 3M's own admission in its brief, a trial court does not abuse its discretion per se by not stating reasons for decisions that are within its discretion. Rather, this Court will look at the evidence to see if that evidence justifies the trial court's decision. In the case sub judice, we find that the chancellor did not abuse his discretion in denying prejudgment interest. Liability over attorneys' fees was in dispute, and this Court's precedent is to disallow prejudgment interest in that event. This Court can assume that the chancellor made determinations of fact sufficient to support the court's judgment entered in favor of 3M. Thus, we find that the chancellor's denial of prejudgment was not manifest error, and accordingly, we find 3M's issue raised on cross-appeal to be without merit.

## CONCLUSION

¶34. Pursuant to the indemnification clause in the contract voluntarily entered into by both Microtek and 3M, the chancellor did not err in granting summary judgment in favor of 3M for attorneys fees incurred by 3M in defending a Pennsylvania personal injury lawsuit commenced by a person who claimed to have been injured by a defective surgical drape manufactured by Microtek and marketed by 3M, inasmuch as Microtek refused to provide a defense; that the amount of attorneys' fees assessed against Microtek and in favor of 3M by the chancellor was not a manifest abuse of discretion; and, that the chancellor likewise did not abuse his discretion in denying 3M's request for prejudgment interest. We thus affirm the final judgment of the

18

Lowndes County Chancery Court both on the direct appeal of Microtek Medical, Inc., and the cross-appeal of 3M Company.

¶35.    **ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED.**

**SMITH, C.J., WALLER, P.J., DIAZ, GRAVES AND RANDOLPH, JJ., CONCUR. DICKINSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.  COBB, P.J., AND EASLEY, J., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶36.    I agree with the majority that Microtek is not responsible for prejudgment interest. However, I dissent to so much of the majority opinion as finds Microtek could be liable for attorney fees under the indemnification language of the contract.    The indemnification provision very clearly and specifically limits Microtek's indemnity obligation to cases where 3M's losses (in this case, attorney fees) occurred "by reason of Seller's breach of warranty . . . or any negligent act or omission on the part of [Microtek]."  The lawsuit against 3M made claims that Microtek's product was defective.    3M was awarded summary judgment.  Thus, there was no finding that Microtek breached any warranty or was negligent.    Absent such a finding, the indemnity clause does not apply.    Therefore, 3M is not entitled to recover anything from Microtek.

¶37.    In support of its argument, 3M tells this Court that its "interpretation of the 1997 Contract is faithful to settled law.    Courts throughout the United States recognize that proof of actual liability against an indemnitee is not a prerequisite to the indemnitee's ability to seek indemnity from an indemnitor."

¶38. The majority apparently accepted 3M's argument without checking the accuracy of the authorities cited. The cited cases all involve distinctly different indemnity contract language, and each case is easily distinguishable.

¶39. In ***Burlington Northern, Inc. v. Hughes Bros., Inc.***, 671 F.2d 279, 281 (8th Cir. 1982), Burlington Northern and Hughes Brothers entered into an industrial track agreement which stated, "[Hughes] also agrees to indemnify and hold harmless [Burlington] for loss, damage, or injury from any act or omission of [Hughes] . . . ." When a Burlington employee was injured and sued the railroad under the Federal Employers Liability Act ("FELA"), Burlington notified Hughes of the claim and asserted that it was obligated to indemnify Burlington pursuant to the contract. ***Id.*** at 282. Hughes denied responsibility, and Burlington settled with the injured employee and then sued Hughes for indemnification. ***Id.*** In order to establish that the settlement was reasonable, the trial judge required proof that Burlington was liable for the employee's injury. ***Id.*** The court found the settlement reasonable because Burlington's liability under FELA was established as matter of law. ***Id.*** at 283. Thus, 3M improperly cites this case for the proposition that proof of actual legal liability to the injured party is not a requirement when liability under an indemnity contract has been denied by the indemnitor.

¶40. In ***Bainville v. Hess Oil V.I. Corp.***, 837 F.2d 128, 129 (3d Cir. 1988), the indemnity provision required the general contractor to "indemnify, exonerate, and hold harmless [the company] against loss, damage, liability or expense by reason of any suits, claims, demands, judgments or causes of action for personal injury (including death) . . . arising out of or in any

way in consequence of the performance hereunder by [the general contractor] . . . ." When an employee hired by the general contractor was injured while working for the company, he brought a lawsuit against the company. *Id.* at 130. The general contractor refused to defend the suit, so the company filed a third-party indemnity action against the general contractor. *Id.* Before trial, the company settled the claim with the plaintiff. *Id.*

¶41.    In requiring the general contractor to provide indemnity, the court focused on the contract language, stating:

> We have no trouble concluding that here the intent of the parties was not to require a determination of actual liability as a precondition of the duty to indemnify. The indemnity agreement applies to 'any suits, claim, demands, judgments or causes of action for personal injury.' There is no question that [the company] was faced with a demand from the original plaintiff.

*Id.* at 131.

¶42.    The indemnity language in the case before us today includes an additional provision which requires the claim arise "by reason of Seller's breach of warranty . . . or any negligent act or omission on the part of [Microtek]." There was no language in the *Bainville* contract which conditioned the general contractor's duty to indemnify on a finding of the general contractor's fault.

¶43.    The contract in *Missouri Pacific Railroad v. Kansas Gas & Electric Co.*, 862 F.2d 796, 797 (10th Cir. 1988), provided that

> [KG & E] assumes full responsibility for, and shall defend, indemnify and save harmless the [railroad] from and against, any and all liability, suits, claims, damages, costs (including attorneys' fees), losses, outlays and expenses in any manner caused by, arising out of or connected with the failure or refusal of [KG

21

& E] to comply with, observe or perform any of the provisions of this Paragraph
. . . .

An employee of the railroad was injured while attempting to re-rail an engine that derailed due to KG & E's violation of a provision of the agreement between the parties. *Id.* at 798. KG & E refused to participate in the settlement negotiations with the plaintiff, and the railroad settled with the plaintiff. *Id.* The railroad then sued KG & E for indemnity. *Id.*

¶44.    The court discussed the reasonableness of the settlement between the railroad and the injured plaintiff, stating:

> [w]here an indemnitor denies liability and refuses to assume the defense of a claim under a contract of indemnity, the indemnitee, without waiving its rights, may enter into a good faith, reasonable and prudent settlement with the claimant. Proof of absolute legal liability or the actual amount of damages is not necessary in a subsequent action for recovery against the indemnitor. Rather, the indemnitee 'need only prove its potential liability, a relatively simple showing under the strict FELA standards, and that the settlement amount was *reasonably related* to its employee's injuries.'

*Id.* at 800 (emphasis in original; internal citations omitted). In the case before us today, there is no possibility that Microtek had any legal liability because it was awarded summary judgement.

¶45.    In *Altermatt v. Arlan's Department Store, Inc.*, 169 N.W.2d 231, 232 (Minn. 1969), the plaintiff was injured in the parking lot and sued Arlan's. Arlan's initiated a third-party action for indemnity against a construction company. *Id.* Before trial, Arlan's settled Altermatt's claim and proceeded with the trial to establish its right to indemnity from the construction company, which was under a contractual duty to maintain the parking lot. *Id.* The

court held that a settlement with a claimant will not prevent the indemnitee from recovering from the indemnitor where the indemnitee has incurred liability because of a breach of duty owed to him by the indemnitor. *Id.*

¶46.    In summary, none of the cases cited by 3M or the majority stand for the proposition that "proof of actual liability against an indemnitee is not a prerequisite to the indemnitee's ability to seek indemnity from an indemnitor." The fact is, each indemnity agreement stands upon its own language. The very specific language in this case requires proof that Microtek either breached a warranty or was guilty of negligent conduct. Microtek was awarded summary judgement on all claims against it; and therefore, no such proof is possible. I therefore respectfully dissent in part.